# COMMISSIONER OF INTERNAL REVENUE $v$. KOWALSKI ET UX.

No. 76–1095.  Argued October 12, 1977—Decided November 29, 1977

78

*Stuart A. Smith* argued the cause for petitioner. With him on the brief were *Solicitor General McCree* and *Acting Assistant Attorney General Baum.*

*Carl B. Cordes* argued the cause for respondents. With him on the brief was *Herrick K. Lidstone.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case presents the question whether cash payments to state police troopers, designated as meal allowances, are included in gross income under § 61 (a) of the Internal Revenue Code of 1954, 26 U. S. C. § 61 (a),[1] and, if so, are otherwise excludable under § 119 of the Code, 26 U. S. C. § 119.[2]

---

[1] "§ 61. Gross income defined.

"(a) General definition.

"Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions, and similar items . . . ."

## I

The pertinent facts are not in dispute. Respondent[3] is a state police trooper employed by the Division of State Police of the Department of Law and Public Safety of the State of New Jersey. During 1970, the tax year in question, he received a base salary of $8,739.38, and an additional $1,697.54[4] designated as an allowance for meals.

The State instituted the cash meal allowance for its state police officers in July 1949. Prior to that time, all troopers were provided with midshift[5] meals in kind at various meal stations located throughout the State. A trooper unable to eat at an official meal station could, however, eat at a restaurant and obtain reimbursement. The meal-station system proved unsatisfactory to the State because it required troopers to leave their assigned areas of patrol unguarded for extended

---

[2] "§ 119. Meals or lodging furnished for the convenience of the employer.

"There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

"(1) in the case of meals, the meals are furnished on the business premises of the employer . . . .

"In determining whether meals . . . are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation."

[3] References to "respondent" are to Robert J. Kowalski. Nancy A. Kowalski, also a respondent, is a party solely because she filed a joint return with her husband for the 1970 tax year.

[4] Respondent was entitled to $1,740 in meal allowances, see n. 7, *infra*, but for reasons not disclosed by the record received the lesser amount.

[5] While on active duty, New Jersey troopers are generally required to live in barracks. Meals furnished in kind at the barracks before or after a patrol shift are not involved in this case. Nor is the meal allowance intended to pay for meals eaten before or after a shift in those instances in which the trooper is not living in the barracks. However, because of the duration of some patrols, a trooper may be required to eat more than one meal per shift while on the road.

periods of time. As a result, the State closed its meal stations and instituted a cash-allowance system. Under this system, troopers remain on call in their assigned patrol areas during their midshift break. Otherwise, troopers are not restricted in any way with respect to where they may eat in the patrol area and, indeed, may eat at home if it is located within that area. Troopers may also bring their midshift meal to the job and eat it in or near their patrol cars.

The meal allowance is paid biweekly in advance and is included, although separately stated, with the trooper's salary. The meal-allowance money is also separately accounted for in the State's accounting system. Funds are never commingled between the salary and meal-allowance accounts. Because of these characteristics of the meal-allowance system, the Tax Court concluded that the "meal allowance was not intended to represent additional compensation." 65 T. C. 44, 47 (1975).

Notwithstanding this conclusion, it is not disputed that the meal allowance has many features inconsistent with its characterization as a simple reimbursement for meals that would otherwise have been taken at a meal station. For example, troopers are not required to spend their meal allowances on their midshift meals, nor are they required to account for the manner in which the money is spent. With one limited exception not relevant here,[6] no reduction in the meal allowance is made for periods when a trooper is not on patrol because, for example, he is assigned to a headquarters building or is away from active duty on vacation, leave, or sick leave. In addition, the cash allowance for meals is described on a state police recruitment brochure as an item of salary to be received in addition to an officer's base salary and the amount of the meal allowance is a subject of negotiations between the State and the police troopers' union. Finally, the amount of an officer's

---

[6] The amount of the allowance is adjusted only when an officer is on military leave.

cash meal allowance varies with his rank [7] and is included in his gross pay for purposes of calculating pension benefits.

On his 1970 income tax return, respondent reported $9,066 in wages. That amount included his salary plus $326.45 which represented cash meal allowances reported by the State on respondent's Wage and Tax Statement (Form W–2).[8] The remaining amount of meal allowance, $1,371.09, was not reported. On audit, the Commissioner determined that this amount should have been included in respondent's 1970 income and assessed a deficiency.

Respondent sought review in the United States Tax Court, arguing that the cash meal allowance was not compensatory but was furnished for the convenience of the employer and hence was not "income" within the meaning of § 61 (a) and that, in any case, the allowance could be excluded under § 119. In a reviewed decision, the Tax Court, with six dissents,[9] held that the cash meal payments were income within the meaning of § 61 and, further, that such payments were not excludable under § 119.[10] 65 T. C. 44 (1975). The Court of Appeals for

---

[7] Troopers, such as respondent, and other noncommissioned officers received $1,740 per year; lieutenants and captains received $1,776, majors $1,848, and the Superintendent $2,136.

[8] On October 1, 1970, the Division of State Police began to withhold income tax from amounts paid as cash meal allowances. No claim has been made that the change in the Division's withholding policy has any relevance for this case.

[9] A seventh judge concurred in the majority opinion with respect to §§ 61 and 119, but dissented on the ground that the meal allowance was deductible under § 162 (a) of the Code, see n. 30, infra, as "ordinary and necessary expenditures required as a part of petitioner's duties." 65 T. C., at 63. Since respondent has not made this contention here, we have no occasion to consider it.

[10] The Tax Court also determined that amounts of meal allowance attributable to respondent's expenses while "away from home" as defined in § 162 (a) (2) of the Code, see n. 30, infra, were properly deducted from respondent's income as travel expenses. See United States v. Correll, 389 U. S. 299 (1967). The Commissioner did not appeal from this holding.

the Third Circuit, in a *per curiam* opinion, held that its earlier
decision in *Saunders* v. *Commissioner*, 215 F. 2d 768 (1954),
which determined that cash payments under the New Jersey
meal-allowance program were not taxable, required reversal.
544 F. 2d 686 (1976). We granted certiorari to resolve a
conflict among the Courts of Appeals on the question.[11] 430
U. S. 944 (1977). We reverse.

## II

### A

The starting point in the determination of the scope of
"gross income" is the cardinal principle that Congress in cre-
ating the income tax intended "to use the full measure of
its taxing power." *Helvering* v. *Clifford*, 309 U. S. 331, 334
(1940); accord, *Helvering* v. *Midland Mutual Life Ins. Co.*,
300 U. S. 216, 223 (1937); *Douglas* v. *Willcuts*, 296 U. S. 1, 9
(1935); *Irwin* v. *Gavit*, 268 U. S. 161, 166 (1925). In apply-
ing this principle to the construction of § 22 (a) of the Internal
Revenue Code of 1939 [12] this Court stated that "Congress
applied no limitations as to the source of taxable receipts, nor
restrictive labels as to their nature[, but intended] to tax all

---

[11] See *Wilson* v. *United States*, 412 F. 2d 694 (CA1 1969) (troopers'
subsistence allowance taxable); *United States* v. *Keeton*, 383 F. 2d 429
(CA10 1967) (*per curiam*) (troopers' subsistence allowance nontaxable);
*United States* v. *Morelan*, 356 F. 2d 199 (CA8 1966) (same); *United
States* v. *Barrett*, 321 F. 2d 911 (CA5 1963) (same); *Magness* v. *Commis-
sioner*, 247 F. 2d 740 (CA5 1957) (troopers' subsistence allowance taxable),
cert. denied, 355 U. S. 931 (1958); *Saunders* v. *Commissioner*, 215 F. 2d
768 (CA3 1954) (troopers' meal allowance nontaxable). See also *Ghas-
tin* v. *Commissioner*, 60 T. C. 264 (1973) (troopers' subsistence allowance
taxable); *Hyslope* v. *Commissioner*, 21 T. C. 131 (1953) (troopers' meal
allowance taxable).

[12] 53 Stat. 9, as amended, ch. 59, 53 Stat. 574. This section provided:

"(a) GENERAL DEFINITION.—'Gross income' includes gains, profits,
and income derived from salaries, wages, or compensation for personal
service, . . . or gains or profits and *income derived from any source what-
ever*." (Emphasis added.)

gains except those specifically exempted." *Commissioner* v. *Glenshaw Glass Co.,* 348 U. S. 426, 429–430 (1955), citing *Commissioner* v. *Jacobson,* 336 U. S. 28, 49 (1949), and *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84, 87–91 (1934). Although Congress simplified the definition of gross income in § 61 of the 1954 Code, it did not intend thereby to narrow the scope of that concept. See *Commissioner* v. *Glenshaw Glass Co., supra,* at 432, and n. 11; H. R. Rep. No. 1337, 83d Cong., 2d Sess., A18 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess., 168 (1954).[13] In the absence of a specific exemption, therefore, respondent's meal-allowance payments are income within the meaning of § 61 since, like the payments involved in *Glenshaw Glass Co.,* the payments are "undeniabl[y] accessions to wealth, clearly realized, and over which the [respondent has] complete dominion." *Commissioner* v. *Glenshaw Glass Co., supra,* at 431. See also *Commissioner* v. *LoBue,* 351 U. S. 243, 247 (1956); *Van Rosen* v. *Commissioner,* 17 T. C. 834, 838 (1951).

Respondent contends, however, that § 119 can be construed to be a specific exemption covering the meal-allowance payments to New Jersey troopers. Alternatively, respondent argues that notwithstanding § 119 a specific exemption may be found in a line of lower-court cases and administrative rulings which recognize that benefits conferred by an employer on an employee "for the convenience of the employer"—at least when such benefits are not "compensatory"—are not income within the meaning of the Internal Revenue Code. In responding to these contentions, we turn first to § 119. Since we hold that § 119 does not cover cash payments of any kind, we then trace the development over several decades of the convenience-of-the-employer doctrine as a determinant

---

[13] The House and Senate Reports state:

"[Section 61] corresponds to section 22 (a) of the 1939 Code. While the language in existing section 22 (a) has been simplified, the all-inclusive nature of statutory gross income has not been affected thereby. Section 61 (a) is as broad in scope as section 22 (a)."

of the tax status of meals and lodging, turning finally to the question whether the doctrine as applied to meals and lodging survives the enactment of the Internal Revenue Code of 1954.

## B

Section 119 provides that an employee may exclude from income "the value of any meals . . . furnished to him by his employer for the convenience of the emloyer, but only if . . . the meals are furnished on the business premises of the employer . . . ." By its terms, § 119 covers *meals* furnished by the employer and not *cash* reimbursements for meals. This is not a mere oversight. As we shall explain at greater length below, the form of § 119 which Congress enacted originated in the Senate and the Report accompanying the Senate bill is very clear: "Section 119 applies only to meals or lodging furnished in kind." S. Rep. No. 1622, 83d Cong., 2d Sess., 190 (1954). See also Treas. Reg. § 1.119–1 (c)(2), 26 CFR § 1.119–1 (1977). Accordingly, respondent's meal-allowance payments are not subject to exclusion under § 119.

## C

The convenience-of-the-employer doctrine is not a tidy one. The phrase "convenience of the employer" first appeared in O. D. 265, 1 Cum. Bull. 71 (1919), in a ruling exempting from the income tax board and lodging furnished seamen aboard ship. The following year, T. D. 2992, 2 Cum. Bull. 76 (1920), was issued and added a convenience-of-the-employer section to Treas. Regs. 45, Art. 33, the income tax regulations then in effect.[14] As modified, Art. 33 stated:

"Art. 33. *Compensation paid other than in cash.* . . . When living quarters such as camps are furnished to

---

[14] Substantially identical language appeared in the income tax regulations on the date of the 1954 recodification of the Internal Revenue Code. See Treas. Regs. 111, § 29.22 (a)–3 (1943); Treas. Regs. 118, § 39.22 (a)–3 (1953).

employees for the convenience of the employer, the ratable value need not be added to the cash compensation of the employee, but where a person receives as compensation for services rendered a salary and in addition thereto living quarters, the value to such person of the quarters furnished constitutes income subject to tax. . . ."

While T. D. 2992 extended the convenience-of-the-employer test as a general rule solely to items received in kind, O. D. 514, 2 Cum. Bull. 90 (1920), extended the convenience-of-the-employer doctrine to cash payments for "supper money." [15]

The rationale of both T. D. 2992 and O. D. 514 appears to have been that benefits conferred by an employer on an employee in the designated circumstances were not compensation for services and hence not income. Subsequent rulings equivocate on whether the noncompensatory character of a benefit could be inferred merely from its characterization by the employer or whether there must be additional evidence that employees are granted a benefit solely because the employer's business could not function properly unless an employee was furnished that benefit on the employer's premises. O. D. 514, for example, focuses only on the employer's characterization.[16] Two rulings issued in 1921, however,

---

[15] " 'Supper money' paid by an employer to an employee, who voluntarily performs extra labor for his employer after regular business hours, *such payment not being considered additional compensation and not being charged to the salary account,* is considered as being paid for the convenience of the employer . . . ." (Emphasis added.)

[16] See n. 15, *supra.* O. D. 914, 4 Cum. Bull. 85 (1921), is another ruling that makes tax consequences turn on the intention of the employer. Under O. D. 914, lodging furnished to employees of the Indian Service was determined to be income if the Department of the Interior charged such lodging to the appropriation from which compensation was normally paid; otherwise, it was not. See also O. D. 11, 1 Cum. Bull. 66 (1919) *(semble)* ("maintenance" paid to Red Cross workers includable in income only to the extent it exceeds actual living expenses).

dealing respectively with cannery workers [17] and hospital employees,[18] emphasize the necessity of the benefits to the functioning of the employer's business, and this emphasis was made the authoritative interpretation of the convenience-of-the-employer provisions of the regulations in Mim. 5023, 1940-1 Cum. Bull. 14.[19]

Adding complexity, however, is Mim. 6472, 1950-1 Cum. Bull. 15, issued in 1950. This mimeograph states in relevant part:

> "The 'convenience of the employer' rule is simply an administrative test to be applied only in cases in which the compensatory character of . . . benefits is not otherwise determinable. It follows that the rule should not be applied in any case in which it is evident from the other circumstances involved that the receipt of quarters or meals by the employee represents compensation for services rendered." *Ibid.*

---

[17] "Where, from the location and nature of the work, it is necessary that employees engaged in fishing and canning be furnished with lodging and sustenance by the employer, the value of such lodging and sustenance may be considered as being furnished for the convenience of the employer and need not, therefore, be included in computing net income . . . ." O. D. 814, 4 Cum. Bull. 84, 84-85 (1921).

[18] "Where the employees of a hospital are subject to immediate service on demand at any time during the twenty-four hours of the day and on that account are required to accept quarters and meals at the hospital, the value of such quarters and meals may be considered as being furnished for the convenience of the hospital and does not represent additional compensation to the employees. On the other hand, where the employees . . . could, if they so desired, obtain meals and lodging elsewhere than in the hospital and yet perform the duties required of them by such hospital, the ratable value of the board and lodging furnished is considered additional compensation." O. D. 915, 4 Cum. Bull. 85, 85-86 (1921).

[19] "3. As a general rule, the test of 'convenience of the employer' is satisfied if living quarters or meals are furnished to an employee who is required to accept such quarters and meals in order to perform properly his duties." 1940-1 Cum. Bull., at 15, citing O. D. 915, *supra,* n. 18.

Mimeograph 6472 expressly modified all previous rulings which had suggested that meals and lodging could be excluded from income upon a simple finding that the furnishing of such benefits was necessary to allow an employee to perform his duties properly.[20] However, the ruling apparently did not affect O. D. 514, which, as noted above, creates an exclusion from income based solely on an employer's characterization of a payment as noncompensatory.

Coexisting with the regulations and administrative determinations of the Treasury, but independent of them, is a body of case law also applying the convenience-of-the-employer test to exclude from an employee's statutory income benefits conferred by his employer.

An early case is *Jones* v. *United States,* 60 Ct. Cl. 552 (1925). There the Court of Claims ruled that neither the value of quarters provided an Army officer for nine months of a tax year nor payments in commutation of quarters paid the officer for the remainder of the year were includable in income. The decision appears to rest both on a conclusion that public quarters by tradition and law were not "compensation received as such" within the meaning of § 213 of the Revenue Act of 1921, 42 Stat. 237, and also on the proposition that "public quarters for the housing of . . . officers is as much a military necessity as the procurement of implements of warfare or the training of troops." 60 Ct. Cl., at 569; see *id.,* at 565–568. The Court of Claims, in addition, rejected the argument that money paid in commutation of quarters was income on the ground that it was not "gain derived . . . from labor" within the meaning of *Eisner* v. *Macomber,* 252 U. S. 189 (1920), but apparently was at most a reimbursement to the officer for furnishing himself with a necessity of his job in those instances in which the Government found it convenient to leave the task of procuring quarters to an individual officer. 60 Ct. Cl., at 574–578.

---

[20] See 1950–1 Cum. Bull., at 16.

Subsequent judicial development of the convenience-of-the-employer doctrine centered primarily in the Tax Court. In two reviewed cases decided more than a decade apart, *Benaglia* v. *Commissioner,* 36 B. T. A. 838 (1937), and *Van Rosen* v. *Commissioner,* 17 T. C. 834 (1951), that court settled on the business-necessity rationale for excluding food and lodging from an employee's income.[21]  *Van Rosen's* unanimous decision is of particular interest in interpreting the legislative history of the 1954 recodification of the Internal Revenue Code since it predates that recodification by only three years. There, the Tax Court expressly rejected any reading of *Jones, supra,* that would make tax consequences turn on the intent of the employer, even though the employer in *Van Rosen* as in *Jones* was the United States and, also as in *Jones,* the subsistence payments involved in the litigation were provided by military regulation.[22]  In addition, *Van Rosen* refused to fol-

---

[21] "The better and more accurate statement of the reason for the exclusion from the employee's income of the value of subsistence and quarters furnished in kind is found, we think, in *Arthur Benaglia,* 36 B. T. A. 838, where it was pointed out that, on the facts, the subsistence and quarters were not supplied by the employer and received by the employee 'for his personal convenience[,] comfort or pleasure, but solely because he could not otherwise perform the services required of him.' In other words, though there was an element of gain to the employee, in that he received subsistence and quarters which otherwise he would have had to supply for himself, he had nothing he could take, appropriate, use and expend according to his own dictates, but rather, the ends of the employer's business dominated and controlled, just as in the furnishing of a place to work and in the supplying of the tools and machinery with which to work. The fact that certain personal wants and needs of the employee were satisfied was plainly secondary and incidental to the employment." *Van Rosen* v. *Commissioner,* 17 T. C., at 838.

[22] Van Rosen was a civilian ship captain employed by the United States Army Transportation Corps. *Id.,* at 834. In this capacity, his pay and subsistence allowances were determined by the Marine Personnel Regulations of the Transportation Corps of the Army. *Id.,* at 837. His principal argument in the Tax Court was the factual similarity of his case to *Jones* v. *United States,* 60 Ct. Cl. 552 (1925). See 17 T. C., at 837.

low the *Jones* holding with respect to cash allowances, apparently on the theory that a civilian who receives cash allowances for expenses otherwise nondeductible has funds he can "take, appropriate, use and expend," 17 T. C., at 838, in substantially the same manner as "any other civilian employee whose employment is such as to permit him to live at home while performing the duties of his employment." *Id.*, at 836; see *id.*, at 839–840. It is not clear from the opinion whether the last conclusion is based on notions of equity among taxpayers or is simply an evidentiary conclusion that, since Van Rosen was allowed to live at home while performing his duties, there was no business purpose for the furnishing of food and lodging.

Two years later, the Tax Court in an unreviewed decision in *Doran* v. *Commissioner,* 21 T. C. 374 (1953), returned in part to the employer's-characterization rationale rejected by *Van Rosen.* In *Doran,* the taxpayer was furnished lodging in kind by a state school. State law required the value of the lodging to be included in the employee's compensation. Although the court concluded that the lodging was furnished to allow the taxpayer to be on 24-hour call, a reason normally sufficient to justify a convenience-of-the-employer exclusion,[23] it required the value of the lodging to be included in income on the basis of the characterization of the lodging as compensation under state law. The approach taken in *Doran* is the same as that in Mim. 6472, *supra.*[24] However, the Court of Appeals for the Second Circuit, in *Diamond* v. *Sturr,* 221

[23] See *Benaglia* v. *Commissioner,* 36 B. T. A. 838, 839–840 (1937); O. D. 915, *supra,* n. 18.

[24] See also *Diamond* v. *Sturr,* 116 F. Supp. 28 (NDNY 1953), rev'd, 221 F. 2d 264 (CA2 1955) (value of lodgings held taxable on same facts as *Doran*); *Romer* v. *Commissioner,* 28 T. C. 1228 (1957) (following *Doran* for tax years governed by 1939 Code); *Dietz* v. *Commissioner,* 25 T. C. 1255 (1956) (holding the value of an apartment to be includable in income under 1939 Code where the apartment was the only consideration received by the taxpayers for performing janitorial services).

F. 2d 264 (1955), on facts indistinguishable from *Doran,* reviewed the law prior to 1954 and held that the business-necessity view of the convenience-of-the-employer test, "having persisted through the interpretations of the Treasury and the Tax Court throughout years of re-enactment of the Internal Revenue Code," was the *sole* test to be applied. 221 F. 2d, at 268.

### D

Even if we assume that respondent's meal-allowance payments could have been excluded from income under the 1939 Code pursuant to the doctrine we have just sketched, we must nonetheless inquire whether such an implied exclusion survives the 1954 recodification of the Internal Revenue Code. Cf. *Helvering* v. *Winmill,* 305 U. S. 79, 83 (1938). Two provisions of the 1954 Code are relevant to this inquiry: § 119 and § 120,[25] now repealed,[26] which allowed police officers to exclude from income subsistence allowances of up to $5 per day.

In enacting § 119, the Congress was determined to "end the confusion as to the tax status of meals and lodging furnished an employee by his employer." H. R. Rep. No. 1337, 83d Cong., 2d Sess., 18 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess., 19 (1954). However, the House and Senate initially

---

[25] "Sec. 120. STATUTORY SUBSISTENCE ALLOWANCE RECEIVED BY POLICE.

"(a) GENERAL RULE.—Gross income does not include any amount received as a statutory subsistence allowance by an individual who is employed as a police official . . . .

"(b) LIMITATIONS.—

"(1) Amounts to which subsection (a) applies shall not exceed $5 per day.

"(2) If any individual receives a subsistence allowance to which subsection (a) applies, no deduction shall be allowed under any other provision of this chapter for expenses in respect of which he has received such allowance, except to the extent that such expenses exceed the amount excludable under subsection (a) and the excess is otherwise allowable as a deduction under this chapter." 68A Stat. 39.

[26] See Technical Amendments Act of 1958, § 3, 72 Stat. 1607.

differed on the significance that should be given the convenience-of-the-employer doctrine for the purposes of § 119. As explained in its Report, the House proposed to exclude meals from gross income "if they [were] furnished at the place of employment and the employee [was] required to accept them at the place of employment as a condition of his employment." H. R. Rep. No. 1337, *supra*, at 18; see H. R. 8300, 83d Cong., 2d Sess., § 119 (1954). Since no reference whatsoever was made to the concept, the House view apparently was that a statute "designed to end the confusion as to the tax status of meals and lodging furnished an employee by his employer" required complete disregard of the convenience-of-the-employer doctrine.

The Senate, however, was of the view that the doctrine had at least a limited role to play. After noting the existence of the doctrine and the Tax Court's reliance on state law to refuse to apply it in *Doran* v. *Commissioner, supra,* the Senate Report states:

"Your committee believes that the House provision is ambiguous in providing that meals or lodging furnished on the employer's premises, which the employee is required to accept as a condition of his employment, are excludable from income whether or not furnished as compensation. Your committee has provided that the basic test of exclusion is to be whether the meals or lodging are furnished primarily for the convenience of the employer (and thus excludable) or whether they were primarily for the convenience of the employee (and therefore taxable). However, in deciding whether they were furnished for the convenience of the employer, the fact that a State statute or an employment contract fixing the terms of the employment indicate the meals or lodging are intended as compensation is not to be determinative. This means that employees of State institutions who are required to live and eat on the premises will not be taxed

on the value of the meals and lodging even though the State statute indicates the meals and lodging are part of the employee's compensation." S. Rep. No. 1622, *supra*, at 19.

In a technical appendix, the Senate Report further elaborated:

"Section 119 applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income to the extent that such allowances constitute compensation." *Id.*, at 190–191.

After conference, the House acquiesced in the Senate's version of § 119. Because of this, respondent urges that § 119 as passed did not discard the convenience-of-the-employer doctrine, but indeed endorsed the doctrine shorn of the confusion created by Mim. 6472 and cases like *Doran*. Respondent further argues that, by negative implication, the technical appendix to the Senate Report creates a class of noncompensatory cash meal payments that are to be excluded from income. We disagree.

The Senate unquestionably intended to overrule *Doran* and rulings like Mim. 6472. Equally clearly the Senate refused completely to abandon the convenience-of-the-employer doctrine as the House wished to do. On the other hand, the Senate did not propose to leave undisturbed the convenience-of-the-employer doctrine as it had evolved prior to the promulgation of Mim. 6472. The language of § 119 [27] quite plainly rejects the reasoning behind rulings like O. D. 514, see n. 15, *supra*, which rest on the employer's characterization of the nature of a payment.[28] This conclusion is but-

---

[27] "[T]he provisions of an employment contract . . . shall not be determinative of whether . . . meals . . . are intended as compensation."

[28] We do not decide today whether, notwithstanding § 119, the "supper money" exclusion may be justified on other grounds. See, *e. g.*, Treasury Department, Proposed Fringe Benefit Regulations, 40 Fed. Reg. 41118,

tressed by the Senate's choice of a term of art, "convenience of the employer," in describing one of the conditions for exclusion under § 119. In so choosing, the Senate obviously intended to adopt the meaning of that term as it had developed over time, except, of course, to the extent § 119 overrules decisions like *Doran*. As we have noted above, *Van Rosen* v. *Commissioner*, 17 T. C. 834 (1951), provided the controlling court definition at the time of the 1954 recodification and it expressly rejected the *Jones* theory of "convenience of the employer"—and by implication the theory of O. D. 514—and adopted as the exclusive rationale the business-necessity theory. See 17 T. C., at 838–840. The business-necessity theory was also the controlling administrative interpretation of "convenience of the employer" prior to Mim. 6472. See *supra*, at 85–86, and n. 19. Finally, although the Senate Report did not expressly define "convenience of the employer" it did describe those situations in which it wished to reverse the courts and create an exclusion as those where "an employee must accept . . . meals or lodging in order properly to perform his duties." S. Rep. No. 1622, *supra*, at 190.

As the last step in its restructuring of prior law, the Senate adopted an additional restriction created by the House and not theretofore a part of the law, which required that meals subject to exclusion had to be taken on the business premises of the employer. Thus § 119 comprehensively modified the prior law, both expanding and contracting the exclusion for meals and lodging previously provided, and it must therefore be construed as its draftsmen obviously intended it to be— as a replacement for the prior law, designed to "end [its] confusion."

Because § 119 replaces prior law, respondent's further argument—that the technical appendix in the Senate Report

41121 (1975) (example 8). Nor do we decide whether sporadic meal reimbursements may be excluded from income. Cf. *United States* v. *Correll*, 389 U. S. 299 (1967).

recognized the existence under § 61 of an exclusion for a class of noncompensatory cash payments—is without merit. If cash meal allowances could be excluded on the mere showing that such payments served the convenience of the employer, as respondent suggests, then cash would be more widely excluded from income than meals in kind, an extraordinary result given the presumptively compensatory nature of cash payments and the obvious intent of § 119 to narrow the circumstances in which meals could be excluded. Moreover, there is no reason to suppose that Congress would have wanted to recognize a class of excludable cash meal payments. The two precedents for the exclusion of cash—O. D. 514 and *Jones* v. *United States*—both rest on the proposition that the convenience of the employer can be inferred from the characterization given the cash payments by the employer, and the heart of this proposition is undercut by both the language of § 119 and the Senate Report. *Jones* also rests on *Eisner* v. *Macomber,* 252 U. S. 189 (1920), but Congress had no reason to read *Eisner*'s definition of income into § 61 and, indeed, any assumption that Congress did is squarely at odds with *Commissioner* v. *Glenshaw Glass Co.,* 348 U. S. 426 (1955).[29] See *id.,* at 430–431. Finally, as petitioner suggests, it is much more reasonable to assume that the cryptic statement in the technical appendix—"cash allowances . . . will continue to be includable in gross income to the extent that such allowances constitute compensation"—was meant to in-

---

[29] Moreover, it must be recognized that § 213 of the Revenue Act of 1921, 42 Stat. 237, which was involved in *Jones* v. *United States,* made a distinction by its terms between "gross income" which included "salaries, wages, or compensation for personal service" and the "compensation received as such" by an officer of the United States. See 60 Ct. Cl., at 563. The Court of Claims assumed that Congress by so distinguishing intended to tax United States officers more narrowly than other taxpayers by levying the income tax only on amounts expressly characterized by Congress as compensation. See *ibid.* For this reason, *Jones* is of limited value in construing § 61 which contains no language even remotely similar to § 213.

dicate only that meal payments otherwise deductible under § 162 (a)(2) of the 1954 Code [30] were not affected by § 119.

Moreover, even if we were to assume with respondent that cash meal payments made for the convenience of the employer could qualify for an exclusion notwithstanding the express limitations upon the doctrine embodied in § 119, there would still be no reason to allow the meal allowance here to be excluded. Under the pre-1954 convenience-of-the-employer doctrine respondent's allowance is indistinguishable from that in *Van Rosen* v. *Commissioner, supra,* and hence it is income. Indeed, the form of the meal allowance involved here has drastically changed from that passed on in *Saunders* v. *Commissioner,* 215 F. 2d 768 (CA3 1954), relied on by the Third Circuit below, see *supra,* at 82, and in its present form the allowance is not excludable even under *Saunders'* analysis.[31] In any case, to avoid the completely unwarranted result of creating a larger exclusion for cash than kind, the meal allowances here would have to be demonstrated to be necessary to allow respondent "properly to perform his duties." There is not even a suggestion on this record of any such necessity.

Finally, respondent argues that it is unfair that members of the military may exclude their subsistence allowances from income while respondent cannot. While this may be so, arguments of equity have little force in construing the boundaries

---

[30] "§ 162. Trade or business expenses.

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) . . . ;

"(2) Traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade of business . . . ."

[31] Compare *supra,* at 80–81 and *Magness* v. *Commissioner,* 247 F. 2d 740 (CA5 1957), with *Saunders* v. *Commissioner.*

of exclusions and deductions from income many of which, to be administrable, must be arbitrary. In any case, Congress has already considered respondent's equity argument and has rejected it in the repeal of § 120 of the 1954 Code. That provision as enacted allowed state troopers like respondent to exclude from income up to $5 of subsistence allowance per day. Section 120 was repealed after only four years, however, because it was "inequitable since there are many other individual taxpayers whose duties also require them to incur subsistence expenditures regardless of the tax effect. Thus, it appears that certain police officials by reason of this exclusion are placed in a more favorable position taxwise than other individual income taxpayers who incur the same types of expense. . . ." H. R. Rep. No. 775, 85th Cong., 1st Sess., 7 (1957).

<em>Reversed.</em>

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE joins, dissenting.

More than a decade ago the United States Court of Appeals for the Eighth Circuit, in *United States* v. *Morelan,* 356 F. 2d 199 (1966), held that the $3-per-day subsistence allowance paid Minnesota state highway patrolmen was excludable from gross income under § 119 of the Internal Revenue Code of 1954, 26 U. S. C. § 119. It held, alternatively, that if the allowance were includable in gross income, it was deductible as an ordinary and necessary meal-cost trade or business expense under § 162 (a)(2) of the Code, 26 U. S. C. § 162 (a)(2). I sat as a Circuit Judge on that case. I was happy to join Chief Judge Vogel's opinion because I then felt, and still do, that it was correct on both grounds. Certainly, despite the usual persistent Government opposition in as many Courts of Appeals as were available, the ruling was in line with other authority at the appellate level at that time.*

---

*Saunders* v. *Commissioner,* 215 F. 2d 768 (CA3 1954); *United States* v. *Barrett,* 321 F. 2d 911 (CA5 1963); *Hanson* v. *Commissioner,* 298 F. 2d

Two cases, *Magness* v. *Commissioner,* 247 F. 2d 740 (CA5 1957), cert. denied, 355 U. S. 931 (1958), and *Hyslope* v. *Commissioner,* 21 T. C. 131 (1953), were distinguished. 356 F. 2d, at 207.

On December 11, 1967, however, this Court by a 5-3 vote decided *United States* v. *Correll,* 389 U. S. 299, restricting to overnight trips the travel-expense deduction for meal costs under § 162 (a)(2). That decision, of course, disapproved *Morelan*'s alternative ground for decision. I am frank to say that had I been a Member of this Court at the time *Correll* was decided, I would have joined its dissent, 389 U. S., at 307, for I fully agree with Mr. Justice Douglas' observation there, joined by Justices Black and Fortas—an observation which, for me, is unanswerable and unanswered—that the Court, with a bow to the Government's argument for administrative convenience, and conceding an element of arbitrariness, *id.,* at 303, read the word "overnight" into § 162 (a)(2), a statute that speaks only in geographical terms.

The taxpayer in the present case, faced with *Correll,* understandably does not press the § 162 (a)(2) issue, but confines his defense to §§ 61 and 119.

I have no particular quarrel with the conclusion that the payments received by the New Jersey troopers constituted income to them under § 61. I can accept that, but my stance in *Morelan* leads me to disagree with the Court's conclusion that the payments are not excludable under § 119. The Court draws an in-cash or in-kind distinction. This has no appeal or persuasion for me because the statute does not speak specifically in such terms. It does no more than refer to "meals . . . furnished on the business premises of the employer," and from those words the Court draws the in-kind consequence. I am not so sure. In any event, for me, as was the case in *Morelan,* the business premises of the State of

---

391 (CA8 1962). As in *Morelan,* certiorari apparently was not sought in any of this line of cases up to that time.

New Jersey, the trooper's employer, are wherever the trooper is on duty in that State. The employer's premises are statewide.

The Court in its opinion makes only passing comment, with a general reference to fairness, on the ironical difference in tax treatment it now accords to the paramilitary New Jersey state trooper structure and the federal military. The distinction must be embarrassing to the Government in its position here, for the Internal Revenue Code draws no such distinction. The Commissioner is forced to find support for it—support which the Court in its opinion in this case does not stretch to find—only from a regulation, Treas. Reg. § 1.61–2 (b), 26 CFR § 1.61–2 (b) (1977), excluding subsistence allowances granted the military, and the general references in 37 U. S. C. § 101 (25) (1970 ed., Supp. V), added by Pub. L. 93–419, § 1, 88 Stat. 1152, to "regular military compensation" and "Federal tax advantage accruing to the aforementioned allowances because they are not subject to Federal income tax." This, for me, is thin and weak support for recognizing a substantial benefit for the military and denying it for the New Jersey state trooper counterpart.

I fear that state troopers the country over, not handsomely paid to begin with, will never understand today's decision. And I doubt that their reading of the Court's opinion—if, indeed, a layman can be expected to understand its technical wording—will convince them that the situation is as clear as the Court purports to find it.