HAROLD J. KOVEN and CAROL M. KOVEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koven v. Commissioner
Docket No. 2406-76.
United States Tax Court
T.C. Memo 1979-213; 1979 Tax Ct. Memo LEXIS 310; 38 T.C.M. (CCH) 867; T.C.M. (RIA) 79213; May 29, 1979, Filed *310 Petitioner Harold was president and sole shareholder of Sentinal. During 1972 and 1973, Sentinal paid cash meals allowance of $2,980 and $2,948, respectively, to Harold. Food consumed by Harold was purchased by petitioner Carol in the course of her household grocery shopping. Harold ate some of his meals in the kitchen of the family home, and other meals in an office in the home rented by petitioners to Sentinal. Sentinal's business, the providing of guard dogs, was conducted on premises adjacent to petitioners' home. The dogs were housed in a kennel rented by petitioners to Sentinal. Held: Cash meals allowance paid by Sentinal to Harold is not excludable from petitioners' gross income under section 119. Commissioner v. Kowalski,434 U.S. 77 (1977). Held further: Petitioners have failed to sustain their burden of proof as to their deductible expenses for the property rented to Sentinal, except for concessions impliedly made by respondent. Harold J. Koven, pro se. Joseph Falcone and Joseph C. Hollywood, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal income tax against petitioners for 1972 and *311 1973 in the amounts of $906 and $783, respectively. After concession of one issue by petitioners, the issues remaining for decision are as follows: (1) Whether the cash meals allowance received by petitioner Harold J. Koven from his wholly-owned employer is excludable [1] from gross income under section 119. [2]
(2) Whether respondent erred in disallowing a portion of the claimed deductions for expenses of property rented by petitioners to a corporation wholly owned by petitioner *312 Harold J. Koven. [3] FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Harold J. Koven (hereinafter sometimes referred to as "Harold") and Carol M. Koven (hereinafter sometimes referred to as "Carol"), husband and wife, were residents of Howell, Michigan. During 1972 and 1973, Harold was the president and sold shareholder of Sentinal Guard Dog Service, Inc. (hereinafter referred to as "Sentinal"), which was incorporated on November 11, 1971. Sentinal provided dogs to customers who used them for security purposes. During 1972 and 1973 Sentinal paid Harold a meals allowance in cash. Also, petitioners leased to Sentinal a kennel, the land on which the kennel was located, and a portion of petitioners' home. Petitioners' home and the kennel were located on the same parcel of land. 1. Cash meals allowance
During 1972 and 1973, Sentinal paid in cash $2,980 and $2,948, respectively, to *313 Harold as meals allowance. The allowance was computed on a daily basis at a rate of $8 per day. [4] The $8-per-day amount was determined by petitioners' accountant as representing one quarter--there being four individuals in petitioners' household--of the average daily grocery bill for the household. The food consumed by Harold was purchased by Carol in the course of her household grocery shopping; no distinction was made between food purchased with the meals allowance and food purchased with other monies. Harold sometimes ate in the kitchen with his family; at other times he ate in Sentinal's office in petitioners' residence. Harold believed that applicable local law (Osceola Township, in Livingston County, Michigan) required him, as owner and caretaker, to live on the property where the dog kennel was located. When petitioners were on vacation (one two-week vacation in 1972 and one in 1973), Sentinal paid someone to stay on the premises and paid that individual an $8-per-day meals allowance. *314 The $8-per-day meals allowance also was paid to Harold for each of these two-week vacations. On their joint income tax returns for 1972 and 1973, petitioners excluded from gross income the entire cash meals allowance paid by Sentinal to Harold. In the notice of deficiency, respondent included the entire allowance. 2. Kennel, office
The kennel rented by petitioners to Sentinal was a 20-foot by 65-foot cement block building which contained 20 cubicles for dogs. The kennel cost petitioners $7,016 to build. Sentinal owned approximately 40 dogs during 1972 and 1973. The kennel at all times during these years housed 20 dogs, which caused considerable damage to the interior cubicles. The kennel required frequent maintenance, but the basic structure was not rebuilt. On their joint income tax returns for 1972 and 1973, petitioners computed depreciation of the kennel on the straight-line method over a useful life of ten years. The ten-year useful life was selected by petitioners' accountant after Harold told him that petitioners had no basis on which to estimate the useful life of the kennel and that he, the accountant, should do what he thought best. During 1972 and 1973, petitioners *315 leased 288 square feet of their home to Sentinal as an office, that space consisting of a room (180 square feet), a hallway (60 square feet), and a bathroom (48 square feet). The home and the fifteen-acre parcel of land on which it and the kennel were located were purchased by petitioners for $70,000. On their joint income tax returns for 1972 and 1973, petitioners computed depreciation of the portion of their home rented to Sentinal on the straight-line method over a useful life of fifteen years and based on a cost of $6,048 for that portion of the home. OPINION 1. Meals Allowance
Petitioners argue that Harold was required under local law to live on the premises on which the kennel was located, and that the method of payment of the meals allowance was a technicality not affecting the excludability of the allowance under section 119. [5] *316 Respondent argues that section 119 does not apply to any cash meals allowance, that Harold did not eat all his meals on Sentinal's premises, and that the meals allowance was not for the convenience of Sentinal. We agree with respondent that the cash meals allowance is not excludable. Section 119 [6] provides that the value of meals furnished to an employee by the employer are excluded from the employee's gross income under certain circumstances. In Commissioner v. Kowalski,434 U.S. 77 (1977), the Supreme Court held that a State trooper was required to include in his gross income cash meal allowances paid to him by the State. In reaching its conclusion, the Court stated: B Section 119 provides that an employee may exclude from income "the value of any meals… furnished to him by his employer for the convenience of the employer, but only if… the meals are furnished on the business premises of the *317 employer…." By its terms, § 119 covers meals furnished by the employer and not cash reimbursements for meals. This is not a mere oversight. As we shall explain at greater length below, the form of § 119 which Congress enacted originated in the Senate and the Report accompanying the Senate bill is very clear: "Section 119 applies only to meals or lodging furnished in kind." S. Rep. No. 1622, 83d Cong., 2d Sess., 190 (1954). See also Treas. Reg. § 1.119-1(c)(2), 26 CFR § 1.119-1 (1977). Accordingly, respondent's [i.e., Kowalski's] meal allowance payments are not subject to exclusion under § 119. [Emphasis in original; 434 U.S. at 84.] The effect of the Kowalski decision was modified by section 3 of Public Law 95-427 (October 7, 1978), which reads, in relevant part, as follows: SEC. 3. TREATMENT OF CERTAIN STATUTORY SUBSISTENCE ALLOWANCES OR SUBSISTENCE ALLOWANCES NEGOTIATED IN ACCORDANCE WITH STATE LAW RECEIVED BY STATE POLICE OFFICERS BEFORE JANUARY 1, 1978. (a) General Rule.--If-- (1) an individual who was employed as a State police officer received a statutory subsistence allowance or a subsistence allowance negotiated in accordance with State law while so employed, (2) such *318 individual elects, on or before April 15, 1979, and in such manner and form as the Secretary of the Treasury may prescribe, to have this section apply to such allowance, and (3) this section applies to such allowance, then, for purposes of the Internal Revenue Code of 1954, such allowance shall not be included in such individual's gross income. * * *
(c) Other Definitions.--For purposes of this section-- (1) State police officer.--The term "State police officer" means any police officer (including a highway patrolman) employed by a State (or the District of Columbia) on a fulltime basis with the power to arrest. Patently, this limited statutory modification of Kowalski does not apply to petitioners. On the authority of Kowalski, we conclude that the cash meals allowance paid to Harold in 1972 and 1973 is not excludable from petitioners' income under section 119. Petitioners ask us to distinguish Kowalski, because that case "involves a state trooper paid a food allowance while on duty and on patrol. Clearly there is no requirement he reside on patrol and his food allowance was paid only as additional compensation:" The Supreme Court's analysis of section 119 did not depend on the *319 factors noted by petitioners. As set forth above, the Supreme Court concluded that section 119 did not provide an exclusion because what is now section 119(a)(1) applies only to meals furnished in kind and not to cash reimbursements. In the case before us we are dealing with cash reimbursements. The distinction may be assailed by petitioners as a technicality, but that technicality appears to have been dealt with squarely by the Supreme Court and we see nothing in the instant case that is fairly distinguishable on this point. We hold for respondent on the cash meals allowance issue. [7] *320 In view of our disposition of this issue, we need not consider respondent's additional arguments that all or a portion of the claimed amounts are not excludable under section 119 because the meals were not furnished "on the business premises of the employer" or because the meals were not furnished "for the convenience of the employer". 2. Useful Lives
On their tax returns for the years in question, petitioners claimed deductions against their rental income for the kennel and the office facilities in the amounts of $1,105 for 1972 and $1,360 for 1973. The returns showed that the claimed totals were arrived at using the straightline method of depreciation and the following depreciable bases and useful lives: Depreciable
Useful
Annual
Basis
Life
Depreciation
Kennel
$7,016
10 years $ 702
Office
6,048
15 years
403
$1,105
In addition to depreciation, petitioners claimed a deduction for $255 of repair expenses for 1973. In the notice of deficiency respondent allowed those expenses only to the extent of $588 for 1972 and $734 for 1973. At trial and on brief the parties contested only the useful lives of the kennel and the office--petitioners claiming ten years for the kennel and fifteen years for the office, and respondent asserting twenty years for the kennel and 33 1/3 years for the office. Petitioners introduced no evidence as to the useful life of their home. [8] *321 Harold testified that the kennel had a useful life of only ten years. He stated that that useful life was chosen on the advice of his accountant. He presented no evidence from which this Court could determine that the useful life of the kennel was ten years or any other period of time. Petitioners have failed to sustain their burden of proving error in respondent's determination as to rental expense. On this issue, we hold for respondent, except to the extent that respondent has conceded certain elements of this issue. * * *
Petitioners claimed a depreciable basis of $6,048 for the office. Neither the notice of deficiency nor the schedules attached to it specified a different depreciable basis. However, respondent's answer averred that the disallowances were based in part on a determination that "the *322 depreciable basis of the portion of the petitioners' home used for business is $3,838.00." We understand respondent's opening statement at trial as, in effect, conceding that the proper basis for depreciation of the office is the amount used by petitioners--$6,048. In the Rule 155 computation, the depreciable basis to be used is $6,048.
Neither the notice of deficiency nor the schedules attached to it state the useful lives used in determining the asserted deficiencies. It is not clear whether the useful lives set forth in the answer are the same as the useful lives used in computing the disallowance in the notice of deficiency.In order to give effect to any concession the respondent may have impliedly made on this issue and to recognize that respondent clearly failed to bear any burden of proof that may have been placed upon him, the Rule 155 computation is to be made using the shorter of the useful lives (1) used in determining the deficiencies asserted in the notice of deficiency or (2) set forth in the answer. There was no refutation of Harold's testimony as to repairs to the kennel necessitated by the actions of the dogs kept there. The petitioners clearly claimed deductions *323 for $255 for repairs in 1973.It is not clear from the deficiency notice and the schedules attached to it whether any adjustment, negative or positive, was made to the repairs item in computing the amount disallowed. Under the circumstances, we direct that the Rule 155 computation be made by allowing the greater of (1) the repair expenses claimed by petitioners on their income tax returns stipulated into evidence, or (2) the repair expenses allowed in determining the deficiencies asserted in the notice of deficiency. Decision will be entered under Rule 155. Footnotes
1. On answering brief, petitioners (appearing pro se) "Admit" respondent's proposed finding of ultimate fact: "24. The cash meals allowance received by petitioners in amounts of $2,980.00 during 1972 and $2,948.00 during 1973 constituted ordinary income to petitioners." Since this appears to be the major issue in the case and the remainder of that brief indicates petitioners' continuing intention to dispute respondent's determination, we regard this "admission" as an oversight and give it no effect. See Rules 90(e) and 91(e), Tax Court Rules of Practice and Procedure.↩
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
3. The last issue, determination of petitioners' medical expense deduction, is solely derivative; it depends on our resolution of the other remaining issues.↩
4. These are the amounts stipulated to by the parties. Neither side has favored the Court with an explanation of why Harold was paid meals allowance for 372 1/2 days in 1972 and 368 1/2 days in 1973.↩
5. Petitioners concede that $112 of the cash meals allowance should be included in their gross income for each of the years 1972 and 1973, because that amount represents cash meals allowance paid to Harold by Sentinal while Harold was on vacation for fourteen days in each year.
6. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. (a) General Rule.--There shall be excluded from gross income of an employee the value of any meals * * * furnished to him by his employer for the convenience of the employer, but only if-- (1) in the case of meals, the meals are furnished on the business premises of the employer, * * *.↩
7. Petitioners rely on McDowell v. Commissioner,T.C. Memo. 1974-72, to support their contention that the cash meals allowance is excludable from their gross income under section 119.McDowell involved meals furnished in kind, not cash meals allowance, and therefore is not relevant to disposition of the instant case.
8. In their reply brief, petitioners assert that their home was ten years old when they purchased it. Petitioners argue that a fifteen-year useful life is computed by subtracting ten from the twenty-five-year useful life of a new residence.Such a factual assertion presented for the first time on brief does not qualify as properly introduced evidence. Rule 143(b), Tax Court Rules of Practice and Procedure; Evans v. Commissioner,48 T.C. 704, 709 (1967). Also see sec. 1.167(a)-1(b), Income Tax Regs.↩