**FEDERATION PHARMACY SERVICES, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 79–1883.**

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1980.

Decided July 11, 1980.

Michael Trucano, Minneapolis, Minn., for appellant.

Jay W. Miller, Atty., Tax Div., App. Section, Dept. of Justice, Washington, D. C. (argued), M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Richard Farber, Washington, D. C., on brief, for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and ROY,* Judge.

ROY, District Judge.

This is an appeal by the Federation Pharmacy Services, Inc., (Federation) from the decision of the United States Tax Court that it is not a tax-exempt organization as described in § 501(c)(3) of the Internal Revenue Code of 1954. Timely notice of appeal was filed and jurisdiction of this Court is based upon § 7482(a) of the Internal Revenue Code of 1954 (26 U.S.C.).

This case was submitted to the Tax Court for decision on a stipulated administrative record. The record reflects that Metropolitan Senior Federation (Metropolitan), a nonprofit Minnesota corporation whose purpose is to enhance the well-being of Minneapolis-St. Paul senior citizens, organized the Federation. Prior to Federation's formation, Script Shoppes, Inc., (Script), a commercial pharmacy, had agreed with Metropolitan to provide senior citizens with prescription drugs at 10 percent off the lowest retail price in the Minneapolis-St. Paul area and to make free or low-cost delivery of those drugs to certain senior citizens. But Script incurred substantial losses and consequently was forced to discontinue its operation in December 1976. In order to preserve the services that Script had rendered to the elderly, Metropolitan acquired its remaining assets and transferred them to Federation.

According to its articles of incorporation, Federation was organized for the purposes of operating a nonprofit pharmaceutical service for the general public, with special discount rates for senior citizens and handicapped citizens in the Minneapolis-St. Paul metropolitan area.

---

* The Honorable Elsijane T. Roy, Judge, United States District Court for the Eastern and Western Districts of Arkansas, sitting by designation.

In its application for recognition of exemption under § 501(c)(3) of the Internal Revenue Code of 1954, the Federation proposed to sell prescription drugs to its members at a price of 5 percent below the lowest price charged for such items at local for-profit pharmacies, as established by a price survey. Nonmembers would be obliged to pay the established survey price for their drug purchases. Federation's bylaws provide that its members shall consist of those people "who are holders of a VIP Buying Plan card issued by [Metropolitan].[1] The administrative record fails to reveal the criteria used to determine who is eligible to become such a cardholder.

In its application for tax-exempt status Federation stated that all customers, whether members or not, would be required to pay for their drug purchases. Federation gave no commitment that it would reduce prices in any instance below cost, and the organization was not obligated to provide free drugs to any indigent persons.

In order to meet its operating costs Federation expected to rely on the assistance of volunteers to perform certain duties and financial contributions. However, it was admitted that the primary source of income would be derived from its prescription drug sales and that Federation had not formulated a program for soliciting contributions. Federation planned to promote its products through advertising, principally directed at senior citizens and the handicapped. After adverse rulings from the Tax Commission, Federation then petitioned the Tax Court for a declaratory judgment relating to its classification as a § 501(c)(3) organization. The majority of the Court held that Federation must be denied tax-exempt status because "it is operated for a substantial commercial purpose."[2] The Court emphasized that the selling of prescription drugs at a discount to the elderly and the handicapped does not in itself manifest a charitable purpose.

The only issue before this Court is whether the Tax Court correctly decided that Federation does not qualify as a tax-exempt organization.

Federation contends that its activities accomplish two exempt purposes—the promotion of health and the relief of financial distress of the aged and the handicapped. The burden of proving entitlement to an exemption lies with the party claiming it. In the instant case, the Tax Court held that Federation failed to carry that burden and that it operated for a substantial commercial purpose rather than for an exclusively charitable purpose. This factual finding of the Tax Court may not be disturbed on appeal unless it is shown to be clearly erroneous. *Parker v. Commissioner*, 365 F.2d 792, 798 (8th Cir. 1966), cert. denied, 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967). In *Parker* the Court stated:

Whether or not an organization has a substantial nonexempt purpose is, of course, a question of fact to be determined by the Tax Court. As a question of fact, the determination will not be disturbed by this Court unless the finding was clearly erroneous. 26 U.S.C. § 7482; *Omaha Nat. Bank v. Commissioner*, 183 F.2d 899, 25 A.L.R.2d 628 (8 Cir. 1950); *Hammerstein v. Kelley*, 349 F.2d 928 (8 Cir. 1965); . . . .

See also *Hanover Insurance Co. v. C. I. R.*, 598 F.2d 1211 (1st Cir. 1979); cert. denied, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *Schwartz v. C. I. R.*, 560 F.2d 311 (8th Cir. 1977).

The income of all persons, natural or corporate, is subject to tax unless it comes within a specific statutory exception. *Commissioner v. Kowalski*, 434 U.S. 77, 82–83, 98 S.Ct. 315, 318–319, 54 L.Ed.2d 252 (1977). See also *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156, 93 S.Ct. 1267, 1274, 36

---

1. The regulations of the Minnesota State Pharmaceutical Board preclude the Federation from restricting patronage of its pharmacy to a special group. Federation is also open to the public. However, only a small percentage of sales are made to those who are not cardholders.

2. Four Tax Court judges were of the view that Federation should have been granted its requested exemption.

L.Ed.2d 114 (1973). One of the exceptions to the general rule is § 501(a) of the Internal Revenue Code of 1954, Appendix, *infra*, exempting the income of organizations described in Code § 501(c) (26 U.S.C.) from taxation. Organizations exempt under Code § 501(c)(3) include "Corporations . . . organized and operated exclusively for . . . charitable . . . purposes, . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual . . . ." If an organization fails to meet either the operational or organizational test, it will not come within the provisions of § 501(c)(3) of the Code. Nor will an organization be considered organized or operated exclusively for a charitable purpose established in § 501(c)(3) unless it serves a public, as opposed to a private, interest.

■ In order to operate "exclusively" for a charitable purpose, an organization must engage "primarily in activities which accomplish" such a purpose and its exempt status will be lost "if more than an insubstantial part of its activities is not in furtherance of an exempt purpose." In *Northern Cal. Cent. Services, Inc. v. United States*, 591 F.2d 620 (Ct.Cl.1979), the Court stated:

. . . The test of "exclusivity" has been defined by Treasury Regulations and case law to mean that a substantial nonexempt purpose or activity will disqualify the organization's exempt status, but insubstantial nonexempt activities do not destroy the exemption. *Better Business Bureau of Washington, D. C., Inc. v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945); *St. Louis Union Trust Co. v. United States*, 374 F.2d 427, 431 (8th Cir. 1967); Treas. Reg. § 1.501(c)(3)–(1).

See also *Stevens Bros. Foundation, Inc. v. Commissioner*, 324 F.2d 633, 638 (8th Cir. 1963), cert. denied 396 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84, reh. denied, 377 U.S. 920, 84 S.Ct. 1179, 12 L.Ed.2d 189 (1964).

■ The term "charitable", as used in § 501(c)(3), is to be construed in "its generally accepted legal sense" and includes within its scope "Relief of the poor." Treasury Regulations on Income Tax (1954 Code), § 1.501(c)(3)–1(d)(2). More recently the concept of "charitable" has been broadened to encompass, *inter alia*, the promotion of health. *Northern Cal. Cent. Services, Inc. v. United States, supra*, p. 626.

In the case at bar the selling of prescription drugs by Federation may serve to promote health, but it does not, without more, further a charitable purpose within the scope of § 501(c)(3). See *Sonora Community Hospital v. Commissioner*, 46 T.C. 519, 526 (1966) in which it was stated that the cure of disease merely lays the "foundation" for characterizing an activity as charitable.

■ An organization which does not extend some of its benefits to individuals financially unable to make the required payments reflects a commercial activity rather than a charitable one. In *Sonora Community Hospital v. Commissioner, supra*, the Tax Court denied tax-exempt status to a hospital which provided only a *de minimis* amount of free care. The Court said (46 T.C., p. 526) "a 'charitable' hospital may impose charges or fees for services rendered, and indeed its charity record may be comparatively low depending upon all the facts . . . but a serious question is raised where its charitable operation is virtually inconsequential." (citation omitted)

A similar conclusion was reached by the Court in *Hassett v. Associated Hospital Service Corp.*, 125 F.2d 611 (1st Cir. 1942), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942). There an organization instituted a "nonprofit hospital service plan" to provide health care to its subscribers at a set fee. Any surplus proceeds were used to reduce future subscription rates or increase services and the corporate officers performed their duties without compensation. But the corporation solicited no charitable contributions and its subscribers were required to pay the fee charged in order to receive its benefits. The Court held that such an arrangement was commercial in nature, and although the rates were "as low as possible," the corporation was not organ-

ized and operated exclusively for a charitable purpose. *Hassett v. Associated Hospital Service Corp., supra,* p. 614.

Again, in *B.S.W. Group, Inc. v. Commissioner,* 70 T.C. 352 (1978), a corporation whose purpose was to furnish consulting services to exempt and other not-for-profit organizations sought to be classified as a § 501(c)(3) organization. As in *Hassett,* its officers received no compensation. But the corporation here, too, solicited no contributions and, therefore, while giving some consideration to the client's ability to pay, planned to charge a sufficient fee which would enable it to recover its costs plus a small profit. The Tax Court pointed out that the corporation was engaged in a business normally pursued by commercial enterprises and appeared to be in competition with them, which is "strong evidence of the predominance of nonexempt commercial purposes." *B.S.W. Group, Inc. v. Commissioner, supra,* 70 T.C., p. 358. The Court, moreover, was not impressed by the corporation's statement that it would charge a lesser fee than that imposed by other firms.

In the recent case of *Christian Manner International, Inc. v. Commissioner,* 71 T.C. 661, 670 (1979), the Court held that a corporation which sold books of a religious nature at a profit was pursuing principally a commercial purpose and was thus ineligible for tax-exempt status. As one factor indicating such a purpose, the court cited that the corporation there was in direct competition with other businesses that sold religious literature.

Federation has admitted that it has no program for raising charitable contributions and intends to rely financially on the "patrons of the pharmacy." As pointed out in *B.S.W. Group, Inc.,* and *Harding Hospital, Inc., supra, Lorain Avenue Clinic v. Com-*

*missioner,* 31 T.C. 141 (1958), and *Hassett, supra,* the absence of contributions or of a plan to solicit contributions, which are characteristic of a charitable institution, militated against the finding of tax-exempt status for those respective organizations.

Federation is not an adjunct to a tax-exempt entity or even servicing one.[3] (Compare *United Hospital Services, Inc. v. United States,* 384 F.Supp. 776, 778 (S.D.Ind. 1974), in which an organization that provided laundry services exclusively for tax-exempt hospitals was found to qualify as a § 501(c)(3) organization.) Rather, Federation engages in the sale of prescription drugs to the general public and holders of VIP cards.[4] Such an activity is as presumptively commercial as the sale of religious books (*Christian Manner International, Inc. v. Commissioner, supra,* p. 662; *Scripture Press Foundation, Inc. v. United States,* 285 F.2d 800, 804 (Ct.Cl.1961) cert. denied, 368 U.S. 985, 82 S.Ct. 597, 7 L.Ed.2d 523 (1962) or the sale of consulting services (*B.S.W. Group, Inc. v. Commissioner, supra,* p. 662) or the sale of any other product. The granting of a tax exemption to Federation would necessarily disadvantage other for-profit drug stores with which Federation competes. *Cf. Abbott Labs v. Portland Retail Druggists,* 425 U.S. 1, 17–18, 96 S.Ct. 1305, 1315–1316, 47 L.Ed.2d 537 (1976).

Federation also requires that *all* its customers pay for their prescription drug purchases. Although its members are allowed a 5 percent discount,[5] there is no evidence that Federation has ever offered or is committed to offer its products to any customer below cost. Further, it should be noted that the use of volunteers by Federation to defray its costs does not negate the existence of a commercial purpose. See

---

3. To the extent that Federation services members of Metropolitan, it should be noted that the administrative record indicates that Metropolitan is a nonprofit but not a tax-exempt organization.

4. There is no established criteria for issuance of the cards.

5. As even Federation concedes, the establishment of a discount is not enough to warrant tax exemption. See *B.S.W. Group, Inc. v. Commissioner, supra,* p. 360; *Lorain Ave. Clinic v. Commissioner,* p. 161. The Court also takes judicial notice of the fact that many banks, restaurants, transportation carriers, and other competitive for-profit establishments give special discounts or other preferred treatment to senior citizens.

*Hassett v. Associated Hospital Service Corp., supra,* p. 614; *B.S.W. Group, Inc. v. Commissioner, supra,* p. 358 (corporate officers served without pay). It is immaterial that Federation's objectives may be laudable. In the case of *Est of Hawaii v. Commissioner,* (71 T.C. 1067, p. 1082) (1979), the Tax Court stated:

> We do not question the sincerity or dedication of petitioner's members. But it is petitioner's activities and not its members' devotion to their work that determines whether it is entitled to exemption from taxation. *Scripture Press Foundation v. United States,* 285 F.2d at 804.

■ Moreover, in order for an organization to qualify for exemption under § 501(c)(3) the organization must "establish" that it is neither organized nor operated for the "benefit of private interests." Only Federation's card-holding members are eligible to purchase drugs at a discount. There is no showing one needs financial assistance or is indigent to receive a card. Thus, it has not been "established" that the recipients of any benefits derived from Federation do not represent "private interests."

To summarize, we find Federation relies financially on the sale of prescription drugs to the public with no accommodation made for those unable to pay. As a consequence, it is engaged in competition with for-profit pharmacies in the area. Nor does the administrative record indicate any other activity on Federation's part which establishes the requisite charitable purpose.

Accordingly, we find that the Tax Court's decision that Federation operates for a substantial commercial purpose and does not qualify as a charitable organization exempt from tax under § 501(c)(3) of the Code is not clearly erroneous, but is supported by substantial evidence.

The decision of the Tax Court is affirmed.