ALFRED O. P. LEUBERT AND CELESTINE C. LEUBERT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leubert v. Commissioner
Docket No. 9742-76
United States Tax Court
T.C. Memo 1983-457; 1983 Tax Ct. Memo LEXIS 331; 46 T.C.M. (CCH) 945; T.C.M. (RIA) 83457; August 4, 1983. *331 In February 1969, petitioners moved from Manhasset, on Long Island, in New Yorks State, to an apartment in Manhattan, New York. On December 5, 1969, petitioner-husband and his corporate-employer, W & G, executed a written employment agreement, in part providing for reduction of his salary by 15 percent if he had his principal residence outside of Manhattan. For 1973 his salary was $100,000. During 1973, petitioners resided in the Manhattan apartment, which also was used by petitioner-husband to entertain W & G business associates, to conduct business negotiations, and to do other work. On their 1973 tax return, petitioners deducted $15,000 of their expenses for the apartment. Held: (1) The $15,000 is not excludable from gross income under section 119, I.R.C. 1954, as it is not lodging furnished in kind. (2) The full amount of $15,000 is not deductible under sections 162 and 262, I.R.C. 1954, as petitioners have not shown the extent of business use of the apartment nor is the portion of the $15,000 representing entertainment so deductible, as petitioners have not satisfied the requirements of section 274, I.R.C. 1954. (3) A deduction is allowed for business use of a telephone *332 in the apartment, as estimated under Cohan v. Commissioner,39 F.2d 540 (CA2 1930). The wedding of petitioners' daughter took place on August 18, 1973 (Saturday), at 4 p.m. Thereafter, from 5 p.m. to 11:30 p.m., a wedding reception was held, at which 90 of the 242 attendees were W & G business associates or their spouses. Of the 90, 28 attended a W & G International Divisional Managers meeting from August 20, 1973 (Monday) through August 22, 1973 (Wednesday). On their 1973 tax return, petitioners deducted approximately three-eighths of the wedding reception expenses. Held: (4) The wedding expenses are not deductible under sections 162 and 262, I.R.C. 1954. Alfred O. P. Leubert, pro se. John E. Becker, jr. and William F. Halley, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1973 in the amount of $11,039. After concessions by petitioners, the following issues are for decision: (1) Whether $15,000 of the $100,000 salary paid to petitioner-husband by his employer in 1973, which would not have been paid if he had his principal residence outside of Manhattan, *333 is excludable under section 119; [1]
(2) If the $15,000 is not excludable under section 119, whether all or part of this amount is deductible under section 162; and (3) Whether any portion of the expenses relating to petitioners' daughter's wedding reception is deductible because of the attendance of some of petitioner-husband's and his employer's business associates. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in the instant case was filed, petitioners Alfred O. P. Leubert (hereinafter sometimes referred to as "Leubert") and Celestine C. Leubert, who were husband and wife during 1973, resided in New York, New York. Leubert was first employed by Willcox & Gibbs Sewing Machine Co. in 1958. (Later, Willcox & Gibbs Sewing Machine Co. was renamed Willcox & Gibbs, Inc.; under either name it is hereinafter sometimes referred to as "W & G".) W & G is a New York corporation which began operations in 1859 as a *334 manufacturer of sewing machines. In 1958, W & G expanded into the manufacture and distribution of "high frequency" equipment. From 1958 through 1965, Leubert was employed by W & G as vice-president and treasurer or controller. In January 1966, Leubert became president and chief executive officer, as well as a director, of W & G. Leubert remained in these later positions until he left W & G on January 6, 1976. During the period of Leubert's presidency, W & G embarked on a diversification and acquisition program which substantially increased W & G's annual sales, net income, plant capacity, and number of employees. Annual net sales increased from $11,000,000 in 1965 to $47,000,000 in 1973. Net income increased from $264,000 in 1965 to $2,111,000 in 1973. The number of W & G's plants increased from three in 1965 to ten in 1973. The number of W & G's employees increased from 350 in 1965 to almost 2,000 in 1973. During this period, W & G acquired or started numerous other companies or divisions, thereby expanding into the following areas: (1) manufacturing high frequency equipment, packaging equipment, and decorative ornaments for the appeal industry; (2) importing high-fashion *335 trim for the home sewing industry; and (3) supplying labeling and packaging machinery and supplies for the garment industry.
During this period, Leubert was chairman of the board of several W & G subsidiaries and was a director of Willcox and Gibbs, Ltd., in London, England. In 1973, there were 13 separate operating divisions or subsidiaries of W & G. Under Leubert's direction, W & G began to have much of its manufacturing for the sewing machine division done in Germany, England, and Japan. Leubert was instrumental in establishing a restrictive policy as to W & G's reimbursement of expenses that were either "personal or partially personal and partially business." 1. Apartment
From 1953 to February 1969, petitioners resided in Manhasset, on Long Island, in New York State. On or about February 8, 1969, they sold the home they owned in Manhasset and moved to an apartment (hereinafter sometimes referred to as "the apartment") at 58 West 58 Street, in Manhattan, in New York City. Petitioners chose the specific location of the apartment within Manhattan, finding it through a newspaper advertisement. When petitioners moved into the apartment, they spent $33,000 to furnish it. [2] *336 On December 5, 1969, Leubert and the chairman of W & G's board of directors, on behalf of W & G, executed a written agreement (hereinafter sometimes referred to as "the agreement") as to Leubert's employment. The period to which the agreement relates begins on the date of the agreement (December 5, 1969) and was to end on December 31, 1974 (unless Leubert's employment ended earlier under other provisions of the agreement). The agreement is the first employment contract [3] entered into between Leubert and W & G. In relevant part, the agreement provides as follows: 3. Base Compensation
Leubert's minimum salary during the Employment Period shall be at the rate of sixty-five thousand dollars ($65,000) per annum through December 31, *337 1969, at the rate of eighty thousand dollars ($80,000) thereafter and through December 31, 1971 and at the rate of one hundred thousand dollars ($100,000) thereafter. Such salary shall be payable in equal installments at the end of the monthly accounting periods established by W&G and shall be subject to reduction as provided in paragraph (d) below. In addition: (a) Leubert shall be entitled to reimbursement for expenses reasonably and necessarily incurred by him in connection with the performance of his duties under this agreement, in accordance with W&G's then applicable procedures. Leubert shall not, however, be entitled to any reimbursement for expenses connected with his apartment while his principal residence is in Manhattan.
(d) If, during the Employment Period, Leubert shall have his principal residence outside Manhattan, his salary during such period of principal residence outside Manhattan shall be eeduced by an amount equal to fifteen percent (15%) of the amount otherwise payable under this Section 3. In addition, the agreement provides *338 for a bonus for each calendar year to which the agreement relates (beginning with 1970) equal to one-half of one percent of W & G's net income before income taxes, subject to certain other provisions. For 1973, Leubert's salary was $100,000 and his bonus was $49,000. The terms of the agreement were submitted to W & G's executive compensation committee, which consisted of various outside directors of W & G. After approval by the executive compensation committee, the agreement was submitted to the full W & G board of directors for approval. The agreement, as approved by the latter group, was drafted by the law firm which was at that time corporate counsel for W & G. During 1973, Leubert owned about one percent of the outstanding common stock, and about one-half of one percent of the outstanding Class A stock, of W & G. During 1973, W & G had a policy of not investing in real estate.
During 1973 and thereafter, the corporate offices of W & G (hereinafter referred to as "the corporate offices") were located in the New York City garment district, about one mile from the apartment. Leubert had access to the corporate offices on weekday evenings, and on Saturdays, but there was no heat *339 provided on weekends during the winter. He also had access to the corporate offices on Sundays if he made arrangements a week or two in advance. Leubert's office in the corporate offices was about 16 feet by 16 feet in area; it had a large desk, a conference table with six to eight chairs, and a sofa. During 1973, Leubert was away from home on business a total of 84 days. Petitioners resided in the apartment during all of 1973. During 1973, neither of petitioners' two children lived with them at the apartment. One child was married and lived in New Jersey; the other was at college all during the year and was married at a wedding in August 1973 (see 2. Wedding Reception,infra). The apartment consisted of a living room, dining room, kitchen, den, bedroom, and 2-1/2 baths. No particular portion of the apartment was set aside exclusively for business meetings or business discussions. No business meetings or discussions were held in the bedroom; on any evening, most of Leubert's business guests would have been in all of the other four rooms of the apartment. Aside from Leubert, no one at W & G had a key to the apartment nor did any other person at W & G have free access to the *340 apartment (except by petitioners' invitation). Leubert did not have to make any special arrangements with anyone at W & G if he was going to be away from the apartment on weekends or in the evenings. Leubert used the apartment to entertain people from W & G, major suppliers or customers of W & G, officers and owners of companies to be acquired by W & G, and representatives of banks or other institutional lenders. Many of these people travelled into New York from other parts of the United States or from foreign countries. Many times, these visitors were accompanied by their spouses. The apartment was convenient to the hotels, theatres, and restaurants which many of these visitors patronized. The apartment also was used for business negotiations in acquiring companies or in dealing with suppliers, other business meetings, receipt of confidential business mail, business telephone conferences, and other general work. During 1973, petitioners incurred [4] *341 an additional $3,519 [5] for home furnishings. Also during 1973, they incurred the expenses shown in table 1 with regard to the maintenance or use of the apartment. Table 1 Rent
$9,878.76
Electric
422.38
Insurance
264.00
Daily gratuities
300.00
Christmas gratuities
200.00
Maid service
3,192.76
Telephone
1,068.26
Depreciation of
furnishings
3,519.00
Total
$18,845.16
There were two different telephone numbers for the telephones in the apartment. The telephone expense shown in table 1 was the total expense for both numbers. When Leubert was in New York and not entertaining visitors, he spent two to five hours a night and on weekends on the telephone talking (1) to divisional managers, customers, vendors, and prospective customers or vendors, and (2) on overseas business calls. On petitioners' 1973 tax return, they showed the *342 amounts set forth in table 1, along with $2,400 for entertainment ("cocktails, canapes, etc.--40 weeks at $60 per week") [6] and $1,000 miscellaneous--estimated expenses, for a total of $22,245.16 with regard to the maintenance or use of the apartment. W & G did not reimburse petitioners for any part of their expenses with regard to the apartment. Petitioners deducted as "below-the-line" expenses only $15,000 of the $22,245.16 total, and described the $15,000 as "Expenses Connected with apt. for which salary allowance has been included in W-2." Petitioners did not deduct the remaining $7,245.16 on their 1973 tax return. 2. Wedding Reception
On August 18, 1973, one of the daughters of petitioners was married and petitioners held a wedding reception at the Hotel Pierre. The wedding took place at 4 p.m. and the reception from 5 *343 p.m. to 11:30 p.m. The wedding date was set by petitioners' daughter. W & G scheduled a three-day International Managers meeting to start on Monday, August 20, 1973, at the Canadian Club, in Manhattan. The receiption was attended by 242 people. [7] Of these people, 50 had a business relationship with W & G. (These 50 people are hereinafter referred to as "business-related guests".) An additional 40 of those attending the reception were spouses of business-related guests, and were not themselves business-related guests. Of the 50 business-related guests, 29 were officers, directors, or employees of W & G or one of its subsidiaries or divisions; four were stockholders of W & G; four were officers, employees, or corporate counsel of customers or prospective customers of W & G; six were representatives of, or related to, suppliers to W & G; and seven had other business relationships (i.e., corporate counsel, bankers, insurance broker, consultant) to W & G. At six of the 25 tables at the reception, only business-related guests and their spouses were seated. At four other tables, at least half *344 of the guests seated were business-related guests and their spouses. At four other tables, one or two business-related guests and their spouses were seated, along with other guests. At the reception, Leubert spoke to business-related guests and their spouses a proportionate amount of the time based on their number as compared to the total number of guests (about three-eighths of the time). Leubert was in the reception line for one and one-half hours at the reception. During the rest of the reception, Leubert visited from table to table speaking with the guests. As to the business-related guests, this involved introductions, and talk of (1) the upcoming meeting, (2) customers, (3) the operations and books relating to various W & G divisions, (4) the construction of a factory in Joliet, Illinois, (5) licensing arrangements as to a new product, and (6) a proposed plant for a supplier from Haiti. W & G conducted the International Divisional Managers meeting as scheduled. The meeting ran from 8 a.m. until about 10 p.m. on each of the three days (Monday, August 20, 1973, through Wednesday, August 22, 1973). Leubert chaired the meeting.Two and a half feet of books were produced for the *345 meeting showing details of the operation of each division. Each divisional manager had to produce and present a balance sheet, a cash flow statement, and a three-year plan of operations for his division. During each such presentation, the manager was questioned by the rest of the group as to details of the presentation. Of the business-related guests present at the wedding reception, 28 of the officers, directors, or employees of W & G or its divisions attended all or a portion of the International Divisional Managers meeting. Table 2 shows expenses incurred by petitioners relating to the wedding. Table 2 Invitations and
reception cards
$ 181.41
Orchestra
1,600.00
Transportation from
264.60
church to hotel for
all guests
Flowers
1,191.98
Hotel Pierre
13,352.43
Tips
150.00
Total
$16,740.42
On their 1973 tax return, petitioners showed the following as an employee business expense deduction: Non-reimbursed business portion daughter's wedding: Total Cost 25,000-
Portion Applicable to
business per guest list
[8] *346 6,300-. Of petitioners' 1973 telephone expenses incurred with regard to the maintenance or use of the apartment (see table 1, supra), $200 are ordinary and necessary expenses of Leubert's trade or business as an officer of W & G.
The predominant character of the wedding reception petitioners held for their daughter was that of a personal and family celebration. OPINION I. Apartment
a. Excludability--Section 119
Petitioners contend that $15,000 of Leubert's salary is excludable [9] from gross income under section 119 because (1) the $15,000 "was defined as to amount--therefore in kind", (2) the apartment was W & G's "business *347 premises", and (3) Leubert's residing in the apartment was required by W & G as a condition of Leubert's employment. Respondent contends to the contrary. We agree with respondent that the $15,000 is not excludable from petitioners' income as lodging furnished in kind.
Section 119[10] *348 provides that the value of lodging furnished to an employee by the employer is excludable from the employee's gross income under certain circumstances. In Commissioner v. Kowalski,434 U.S. 77 (1977), the Supreme Court held that a State trooper was required to include in his gross income cash meal allowances [11] paid to him by the State. In reaching its conclusion, the Court stated (434 U.S. at 84) the following: Section 119 provides that an employee may exclude from income "the value of any meals * * * furnished to him by his employer for the convenience of the employer, but only if * * * the meals are furnished on the business premises of the employer * * *." By its terms, § 119 covers meals furnished by the employer and not cash reimbursements for meals. This is not a mere oversight. As we shall explain at greater *349 length below, the form of § 119 which Congress enacted originated in the Senate and the Report accompanying the Senate bill is very clear: "Section 119 applies only to meals or lodging furnished in kind." S. Rep. No. 1622, 83d Cong., 2d Sess., 190 (1954). See also Treas. Reg. § 1.119-1(c)(2), 26 CFR § 1.119-1 (1977). Accordingly, respondent's [i.e., Kowalski's] meal allowance payments are not subject to exclusion under § 119. [Emphasis in original.] Kowalski involved meals, and not lodging. In Goldstein v. Commissioner,73 T.C. 164, 167-168 (1979), we held that the Kowalski analysis applied to lodging; that is, that cash reimbursement for lodging expenses are not excludable under section 119.
W & G provided Leubert with a salary. Of this salary, 15 percent (for the year in issue, $15,000) may fairly be treated as a cash allowance which apparently was intended to (1) reimburse him for the cost of living in Manhattan or (2) induce him to reside in manhattan. Cf. Commissioner v. Lester,366 U.S. 299 (1961). W & G did not *350 provide Leubert with the apartment. We conclude that, because of the failure to meet the "in-kind" test, no part of the $15,000 is excludable from petitioners' income under section 119. Accordingly, we need not decide whether the record in the instant case persuades us that the remaining requirements of section 119 have been met. [12]
The *351 Supreme Court, in Kowalski, analyzed the legislative history of section 119 and concluded that the Congress meant to make form a requirement for exclusion under section 119. 434 U.S. at 90-95. Cash payments are not excludable under this provision. Also, on the record in the instant case, it does not appear that "the economics of the situation are exactly the same." On their 1973 tax return, petitioners listed more than $22,000 of expenses they incurred with regard to the maintenance or use of the apartment. If we are to believe petitioners' statements on their 1973 tax return, W & G covered only 67 percent of the cost of the apartment. In addition, the December 5, 1969, agreement (set forth in relevant part in our Findings of Fact, supra) provides that the salary reduction for residing outside Manhattan is to be 15 percent of Leubert's salary; under that same agreement, his salary was to change from year to year. Nothing in the record suggests that W & G expected Leubert's apartment cost to change in lock-step with the programmed changes in Leubert's salary. Accordingly, the record in the instant case does not persuade us that there was an economic equivalence between the cash allowance *352 or allocation and an in-kind providing of lodging. None of the cases cited by petitioners as to section 119 (except for Kowalski,supra) deals with the payment-in-kind requirement. We hold for respondent on this issue. b. Deductibility--Section 162
On opening brief, petitioners' alternative contention that the $15,000 is deductible appears only in one phrase in the statement of the issues. Their answering brief expands this contention to the effect that the $15,000 is deductible as "necessary business expenses, [under section 162(a)] the deduction of which is allowed by Section 262." Respondent contends that the expenses are nondeductible personal living expenses under section 262, that no portion of the apartment was set aside for business use, [14] *353 that petitioners have failed to show the quality or quantity of any business use of the apartment, and that to the extent the apartment was used for entertainment, petitioners have failed to show that the apartment qualified under section 274 as an entertainment facility. We agree with respondent, in large part.
Deductions are allowable under section 162[15] for the taxpayer's ordinary and necessary expenses in carrying on a trade or business. However, under section 262, [16] personal expenses generally are not deductible. Sharon v. Commissioner,66 T.C. 515, 522-525 (1976), affd. 591 F.2d 1273, 1275 (CA9 1978). Further, section 274[17] *355 provides that no deduction is allowable for entertainment expenses, unless the taxpayer substantiates certain matters by adequate records or by sufficient evidence corroborating his own statement. Under section 1.274-5(c)(2), Income Tax Regs., in order to meet the "adequate records" requirement, a taxpayer is to maintain an account book, diary, statement of expense, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense set forth in section 274(d). If the taxpayer lacks adequate records, a detailed written or oral statement by the taxpayer and sufficient other corroborative evidence is required. Sec. 1.274-5-(c)(3), Income Tax Regs. *354 1. Use for business entertainment
Leubert testified, and we have found, that he used the apartment to entertain a wide variety of people. On brief, petitioners strongly object to respondent's suggestion that this entertainment occurred "[o]n some occasions"; petitioners insist that respondent's suggested finding significantly understates the business entertainment use to which the apartment was put. Also, on their 1973 tax return petitioners claim to have spent $60 per week for 40 weeks on "cocktails, *356 canapes, etc." for entertainment. Petitioners have not established as to any item of expenses for entertainment, the time of the entertainment, the business purpose, or the business relationship to either of the petitioners, of the persons entertained. The broadbrush description in Leubert's testimony does not satisfy the section 274(d) substantiation requirements as to each item of expense for entertainment. Petitioners produced no "adequate records" or other evidence to sufficiently corroborate Leubert's testimony. See Andress v. Commissioner,51 T.C. 863, 868-869 (1969), affd. 423 F.2d 679 (CA5 1970). But for section 274, we might allow a deduction in some amount for petitioners' expenses attributable to their use of the apartment for business entertainment, relying on Cohan v. Commissioner,39 F.2d 540 (CA2 1930). However, the Congress enacted section 274 in part with the specific intent of overruling the so-called "Cohan rule" as to such expenses. Sanford v. Commissioner,50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (CA2 1969). We conclude that petitioners are not entitled to deductions for their expenses attributable to their use of the apartment for business entertainment. *357 Petitioners maintain that similar deductions for apartment expenses were allowed by respondent's agent pursuant to audits for other tax years and that this should affect our conclusion as to 1973. Respondent's agent's allowance of a similar deduction for one tax year does not bind respondent for other tax years. See Coors v. Commissioner,60 T.C. 368, 406 (1973), affd. 519 F.2d 1280 (CA10 1975). We hold for respondent on this issue. 2. Use for other business purposes
Leubert testified that the apartment was used for business entertainment, negotiations, meetings, telephone calls, and general work. We have held, supra, that section 274 forbids deductions for the entertainment portion of the business use. The record does not permit us to determine how much of the business use was entertainment. Nor does the record permit us to determine how much of the time the apartment was devoted to business use in the aggregate, as distinguished from petitioners' personal use. Leubert testified that every room in the apartment, except the bedroom, was used for business purposes to some extent. The record does not permit us to determine how much of the time any room, or other discrete portion *358 of the apartment, was used for business purposes. The record does not permit us to determine whether Leubert's nonentertainment business use of the apartment was any more than occasional or incidental, vis-a-vis petitioners' personal use. Compare Newi v. Commissioner,432 F.2d 998 (CA2 1970), affg. a Memorandum Opinion of this Court [18] (taxpayers allowed to deduct a portion of their apartment expenses upon their showing that one room was used exclusively for business purposes) and Brown v. Commissioner,73 T.C. 723, 728-729 (1980) (taxpayer allowed to deduct one-fourth of her apartment expenses upon her showing that one-half of her apartment was used one-half of the time for business purposes), with Grover v. Commissioner,68 T.C. 598, 603 (1977) (taxpayers not allowed to deduct any part of their apartment expenses where they failed to show the amount of use to which the home office was put), and Hynes v. Commissioner,74 T.C. 1266, 1293-1294 (1980) (taxpayers not allowed to deduct any part of taxpayer-husband's hotel rent where they failed to show how often he used the rented rooms for business meetings).
Leubert testified to substantial use of the telephones *359 in the apartment for business purposes. As is the case with other components of his claimed home office deduction, petitioners provided no details. Doing the best we can with an inadequate record, we conclude that petitioners are permitted to deduct $200 of their telephone expense under section 162. See Cohan v. Commissioner,supra.
We hold for respondent on this issue, except for $200 of telephone expense. II. Wedding Reception
Petitioners contend that $6,300 of their wedding reception expenses are entertainment expenses directly related to Leubert's business as W & G's president, and that these expenses are deductible under section 162 and satisfy the requirements of section 274. Respondent contends to the contrary and asserts that these expenses are personal and nondeductible under section 262. We agree with respondent as to the effect of sections 162 and 262. This is a factual issue requiring petitioners to show that the purpose of the expense was primarily business rather than social or personal. Chapman v. Commissioner,48 T.C. 358, 366 (1967). Where there is a mixture of personal or family considerations and business considerations for an expenditure, especial care *360 is required in determining which considerations predominate, and whether any part of the expenditures may qualify for deduction under the dichotomy of section 162 and section 262. See Sharon v. Commissioner,66 T.C. at 524. In a setting such as the one in the instant case, if any expenditure survives the 162-262 analysis, then it must also pass muster under section 274 in order for it to be deductible. Petitioners' daughter's wedding reception cannot fairly be characterized as being a business meeting or business entertainment. Most of the guests were not business-related guests, nor were they spouses of business-related guests. The record does not include any copy of the notifications sent to the invitees, but we are confident that the notifications were invitations to join in a significant personal and family celebration and not invitations to deal with business matters. The parties' and our research have led to only one case-- Haverhill Shoe Novelty Co. v. Commissioner,15 T.C. 517 (1950)--in which business expense deductions were sought for a wedding reception. In our opinion in Haverhill we described the situation as follows (15 T.C. at 518-519, 520): The petitioner is a corporation *361 engaged in the manufacture of shoe novelties, ornaments, strippings, bows and buckles for the shoe trade. On February 24, 1946, the daughter of petitioner's treasurer, Bernard Glagovsky, was married at the Hotel Bradford in Boston. The treasurer, Bernard Glagovsky, the father of the bride, was the majority stockholder of the petitioner and formulated the various policies of the corporation. As treasurer of the corporation and its majority stockholder, he decided to use his daughter's wedding as a means of entertaining some of the corporation's business customers. Thereupon, he compiled a list of business acquaintances and potential business customers and gave this list to his wife who drew up the list of those to be invited to the wedding. Approximately 400 guests were invited. Of this number, 320 guests actually attended the wedding ceremony and the dinner which followed. About 90 of the 320 guests who attended the ceremony were business customers or potential customers whose names were selected by the corporation's treasurer, Bernard Glagovsky. This figure of about 90 included wives and other members of the families who attended. None of these 90 guests was a relative, close *362 family friend, social acquaintance, or friend of either the bride or groom. In addition to the 90 business customers, including their wives and other members of their families who attended the wedding, the treasurer had invited 30 to 40 business guests who did not attend. After the wedding, there was a dinner and reception for the 320 guests in the main ballroom of the Hotel Bradford. Black, Judge: The only issue we have to dedice is whether part of the expenses of the wedding and reception of the daughter of the treasurer and majority stockholder of the petitioner corporation is properly deductible as ordinary and necessary business expenses of the corporation. The applicable statute is section 23(a)(1)(A) of the Internal Revenue Code [of 1939, predecessor of sec. 162(a)]. There can be no doubt but that petitioner made expenditures which aggregated $6,245.97 in connection with the wedding and reception of the daughter of Bernard Glagovsky. The canceled checks and the bills paid are in evidence. We have no reason to doubt them. In so far as paying a good part of the bills incurred at the wedding and reception, petitioner corporation acted as "father of the bride." But has petitioner *363 shown that these payments are deductible as ordinary and necessary business expenses? We think not. Bernard Glagovsky was the father of the bride and the expenses of the wedding were his personal expenses and are not deductible by the corporation even though the corporation did pay a good part of them. [Fn. ref. omitted; emphasis supplied.] In the instant case, Leubert was the father of the bride. Although his motives for inviting the 50 business-related guests and their 40 spouses may have included some concern for business morale, as petitioners aver, we conclude that the predominant character of the wedding reception was that of a personal and family celebration, and that petitioners have failed to show that any business elements rose to such a level as to permit us to characterize any of the expenditures as being trade or business expenditures. Petitioners seek to distinguish Haverhill on the ground that that case involved a "principal stockholder", while Leubert held only an insignificant ownership interest in W & G. (We pass over the fact that Leubert was not merely a minority shareholder, but also was W & G's president.) Petitioners offer no explanation as to why this *364 distinction should make a difference, and we decline to conjure up possible differences. As in Haverhill, we conclude that the expenses are personal expenses of the father of the bride. Neither side raises another possible distinction between Haverhill and the instant case--that in Haverhill the deduction was sought as an expense of a corporation's trade or business, while the instant case tests the trade or business of an individual. If anything, this distinction may well cut against petitioners, since petitioners have to overcome the hurdle of section 262 as well as section 162. Petitioners seek to tie their inviting the business-related guests to the fact that W & G was about to have its International Managers meeting. However, only 28 of the 50 business-related guests attended the International Managers meeting and 22 of the 40 spouses of the business-related guests at the wedding reception were spouses of those who attended the International Managers meeting. Petitioners make several contentions as to their meeting the requirements of section 274, including the contention that, as to the business-related guests and their spouses, the reception was a "business meal", excepted *365 from section 274 by section 274(e)(1). The purpose of section 274 is not to expand the types of expenses which are deductible under other sections, but to impose additional requirements on certain types of expenses (for entertainment, gifts, etc.). See S. Rept. 87-1881 at 27, 1962-3 C.B. 707, 733; H. Rept. 87-1447 at 19, 1962-3 C.B. 405, 423; H. Rept. (Conf. Rept.) 87-2508 at 15, 1962-3 C.B. 1129, 1143; Andress v. Commissioner,51 T.C. at 866; section 1.274-1, Income Tax Regs.
Because of our conclusion that the $6,300 is not a section 162 expense, we need not consider whether the more stringent section 274 requirements are satisfied. We hold for respondent on this issue. To reflect the foregoing, [19]
Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. The parties stipulate that petitioners moved into the apartment in 1966 and spent the $33,000 at that time. Separately, the parties stipulate that they resided on Long Island from 1953 until they moved into the apartment on or about February 8, 1969. The parties have not sought to reconcile their contradictory stipulations. We believe that the 1966 date is likely to be a typographical error and we find in accordance with the parties' stipulation as to 1969.
3. So stipulated. We assume that the parties mean that the agreement is the first written↩ employment contract between Leubert and W & G.
4. So stipulated. The record does not indicate that petitioners were other than cash basis taxpayers for the year in issue. We assume that the parties meant that the above expenses were paid during 1973 and are not raising an issue as to payment. See Rubnitz v. Commissioner,67 T.C. 621, 627↩, n. 7 (1977). 5. So stipulated. However, on their 1973 tax return petitioners showed only $2,197 as "Additions" to the $33,000 they had previously spent to furnish the apartment. The parties have not favored us with an explanation of the difference between their stipulation and the amount shown on petitioners' tax return.↩
6. On their 1973 tax return, petitioners also claimed $926.61 of entertainment expenses as part of a total of $10,264.33 for Leubert's travel expenses. This $926.61 of entertainment expenses was not adjusted by respondent and is separate from the $2,400 of entertainment expenses which forms a component of the deduction or exclusion in dispute in the instant case.↩
7. So stipulated. The stipulated seating list shows 240 people, including the bride and groom.↩
8. The parties stipulated that the above amount was computed as shown on a stipulated exhibit. The exhibit shows $16.977.06 as total wedding reception-related expenses. The 242 total number of guests (see n. 7, supra↩) was divided into the total wedding reception-related expenses rounded to $17,000, resulting in $70-per-guest expense. The $6,300 portion deducted on the return was computed by multiplying $70 by 90 guests (the 50 business-related guests plus the 40 spouses). The record does not include explanations of the differences between the components of the $16,977.06 total used by petitioners and the $16,740.42 total conceded by respondent and shown in table 2; also the parties do not explain the $25,000 "Total Cost" shown on petitioners' 1973 tax return.
9. On their 1973 tax return, petitioners deducted the $15,000 from adjusted gross income in arriving at taxable income. However, in the instant case, petitioners' primary position is that the $15,000 is excludable from gross income; only as an alternative (b. Deductibility--Section 162,infra↩) do they claim a deduction "below the line".
10. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. (a) General Rule.--There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if-- (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. [The foregoing includes the changes made by section 4 of Pub. L. 95-427, 92 Stat. 996, which was made applicable to pre-enactment years by section 4(b) of this Act.] [The subsequent amendments of this provision (by sec. 205 of the Tax Treatment Extension Act of 1977, Pub. L. 95-615, 92 Stat. 3107, and sec. 108(a)(1)(G) of the Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 225) do not apply to the instant case.]↩
11. The effect of the Kowalski↩ decision on payments for meals furnished State police officers was modified by sections 3 and 4 of Pub. L. 95-427, 92 Stat. 996-997.
12. As part of petitioners' effort to show that W & G required Leubert to accept the apartment as a condition of his employment, petitioners point to the agreement and to the independence of W & G's procedures in entering the agreement. Petitioners also object to respondent's contention that a holding for petitioners on this point would create a "clear" opportunity for abuse. We think petitioners object too much. Petitioners' two children had "left the nest" and, in common with many who are not under compulsion by their employers, petitioners sold their home in the suburbs and moved into Manhattan. They moved into the apartment on or about February 8, 1969, almost 10 months before the stipulated date of the execution of the agreement under which, petitioners maintain, W & G "required" Leubert to accept the apartment "as a condition of his employment."↩
14. Section 280A, disallowing home office deductions but providing exceptions thereto, was added to the Code by section 601(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1569, effective for taxable years beginning after December 31, 1975.
15. Section 162 provides, in relevant part, as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *. ↩
16. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.
Except as otherwise expressly provided in this chapter, [i.e., chapter 1] no deduction shall be allowed for personal, living, or family expenses. ↩
17. Section 274 provides, in relevant part, as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required.--No deduction shall be allowed-- (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the * * * entertainment, amusement, recreation, or use of the facility, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, * * *. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. (h) Regulatory Authority.--The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, * * *. [The subsequent amendments of this provision by sections 602(a) and1906(b)(13)[sic](A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1572, 1834, do not affect the instant case.]↩
18. T.C. Memo. 1969-131↩.
19. The Rule 155 computation is necessary in order to reflect our conclusion that petitioners are entitled to deduct $200 for telephone expenses under section 162 (see I. Apartment,b. Deductibility--Section 162,2. Use for other business purposes,supra↩).