IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DARRIN J. HILLS                          )
and TAWNYA M. KROPF,                     )
                                         )
            Plaintiffs,                  )      TC-MD 101369C
                                         )
       v.                                )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
            Defendant.                   )      **DECISION**

## I.  INTRODUCTION

Plaintiffs appeal from Defendant's October 19, 2010, determination upholding Notices of

Deficiency for tax years 2006, 2007 and 2008.  Trial in the matter was held September 12, 2011,

at the Oregon Tax Court in Salem, Oregon.  Plaintiffs appeared on their own behalf.

Larry Boyd, Tax Auditor, represented Defendant.

## II.  STATEMENT OF FACTS

For the years at issue, Plaintiff Tawnya Kropf (Kropf) operated a home-based business,

"Work at Home United,"[1] through which she refers customers to Melaleuca, Inc. (Melaleuca).[2]

(Ptfs' Compl at 2; Def's Ex C-2.)  Those customers (personal customers) purchase directly from

Melaleuca, identifying Kropf as their representative.  The customers receive the products at a

reduced rate compared to individuals who order directly from Melaleuca online or over the

phone without a representative.  (*Id*.)  Kropf receives a commission on her personal customers'

purchases.  (Def's Ex C-1.)  Kropf also contacts her customers periodically by telephone to

---

[1] The name of the business was "Stayin Home and Lovin It" in 2006.  (Ptfs' Compl at 2.)

[2] Kropf was still operating that business at the time of trial.

answer questions, keep them interested in the products, and gauge their satisfaction. (Ptfs'
Compl at 2.)

Kropf testified that Melaleuca sells an assortment of eco-friendly consumable goods,
including household products such as cleaning and laundry detergents and personal hygiene
items (soaps, shampoos, deodorants), health care products, nutritional supplements, and sports
drinks. (*See id.*)

Kropf's spouse, Darren Hills (Hills), assisted Kropf with her business, but worked (and
continues to work) in a paper mill in Toledo, Oregon. Hills testified that he was the primary
source of financial support for the family, because Kropf was still building her Melaleuca
business. Plaintiffs claimed a loss on Kropf's home-based business for each of the years at issue
after deducting certain business related expenses. Hills testified that he continued to believe that
the Melaleuca business would "take-off" and that he would be able to retire from the paper mill
and assist his wife Kropf on a full-time basis, the two working from home as a team.

Kropf testified that the two key aspects of generating revenue in the Melaleuca business
are the number of customers a representative has and the number of product points a
representative purchases. A Melaleuca representative must have at least eight customers
(individuals who purchase products from Melaleuca through her referral) to earn the title of
"Director." As for "product points," a Melaleuca representative starts out with a 35 point
membership fee. The membership fee is essentially a commitment by the representative to
purchase a specified amount of products, with the points assigned to particular product having a
corresponding dollar value. A representative's commission is tied to a combination of the
number of customers the representative has and the number of product points the representative
purchases. According to Kropf's trial testimony, the base commission is seven percent, and

applies as long as the representative has between zero and eight customers. A representative with nine to 19 customers earns a 14 percent commission. With 20 customers, the commission increases to 20 percent.

Kropf testified that for the years at issue (2006, 2007, and 2008), she had advanced to a higher level "Director 4" status, and was part of the "20–20 Club," because she had more than 20 "customers" and purchased more than a 75 "product points," which afforded her the opportunity of earning commissions of up to 20 percent.[3] (*See* Def's Ex C-1.) Kopf testified that the dollar value of the 75 product points was $130 to $135. As of October 2010, Kropf had 28 active customers, and was required to maintain a minimum of 20. (Ptfs' Compl at 2.)

Plaintiffs redeem their product points by ordering a variety of Melaleuca products, many of which they use at home and at their son's motocross races. Additionally, Plaintiffs give some of these products to friends and local organizations. Plaintiffs admitted that they could resell the products; however, they never do because they feel that reselling the products would be unethical. Furthermore, Plaintiffs feel that they need to use the products in order to recommend them to customers. Plaintiffs claimed deductions on their federal Form Schedule C, line 22 entitled "Supplies," for purchasing these product points in the amounts of $2,210 for 2006, $4,262 for 2007, and $2,720 for 2008. (Def's Ex F-2--F-4.) At the Department of Revenue conference level, Defendant upheld the denial of Plaintiffs' deductions for the purchases of product points in the amounts of $1,735 for 2006, $4,122 for 2007, and $2,600 for 2008. (*Id*. at A-1.)

---

[3] The "20–20" designation presumably comes from the combination of 20 customers and the 20 percent commission.

Additionally, Plaintiffs claimed deductions for advertising expenses associated with their son's amateur motocross racing. The boy was born in May 1992 and was a young teenager (between 14 years old and 16 years old) for the years at issue (2006, 2007, and 2008). Plaintiffs are the primary sponsor of their son as an amateur motocross racer, but hope to add additional riders in the future to create a team. In return for paying for their son's gear, parts, entry fees and travel, Plaintiffs' Melaleuca business decal receives a "premium" spot on his bike. Their logo is also on the truck and trailer that they take to the races. The trailer hauls the motorcycle and gear to events. During the races, the announcers often mention the racers' sponsors, including Plaintiffs' business.

Plaintiffs testified that they have no means of determining how many customers they acquire through their motocross related advertising. They testified that they *occasionally* have someone contact them during a race and purchase products. The court found that testimony to be credible. Plaintiffs' son races an average of three times per month from March through October, and two times per month from November through February. Audience size at these races ranges from 100 to 30,000. Additionally, the son trains midweek at a track and has trained in California during the winter.

On their federal Schedule C, Plaintiffs claimed $9,542 in gross receipts (business income) associated with the Melaleuca business in 2006. (Def's Ex F-1--F-2.) They claimed total expenses for that year in the amount of $26,087, for a net loss of $16,929. (*Id*. at F-2.) Plaintiffs' claimed expenses included $18,041 for advertising. (*Id*.) Defendant allowed $6,102 for advertising, but denied the remaining $11,939. (*Id*. at F-1.)

On their federal Schedule C, Plaintiffs claimed $13,912 in gross receipts associated with the Melaleuca business in 2007. (*Id*. at F-1, F-3.) They claimed total expenses for that year in

DECISION   TC-MD 101369C                                                                                    4

the amount of $34,931, for a net loss of $22,066. (*Id*.) Total claimed advertising expenses were $22,365. (Def's Ex F-3.) Defendant allowed $11,924 in advertising expenses, but denied the remaining $10,441. (*Id*. at F-1.)

Finally, on Plaintiffs' federal Schedule C, they claimed $14,333 in gross receipts associated with the Melaleuca business in 2008. (*Id*. at F-1, F-4.) They claimed total expenses for that year in the amount of $36,028, for a net loss of $22,616. (*Id*. at F-4.) Defendant allowed $4,857 out of the total claimed advertising expenses of $27,018, disallowing $22,161. (*Id*. at F-1.)

On a percentage basis, Defendant has allowed Plaintiffs deductions for advertising expenses in the amounts of 64 percent of Plaintiffs' gross receipts for 2006, 85.8 percent for 2007, and 33.9 percent for 2008. (*Id*.)

## III. ISSUES

(1) Are the personal purchases of product points, later redeemed for various products used by Plaintiffs, allowable business deductions on Plaintiffs' federal Schedule C for the 2006, 2007, and 2008 tax years?

(2) Are the advertising expenses associated with Plaintiffs' son's motocross racing allowable business deductions on Plaintiffs' federal Schedule C for the 2006, 2007, and 2008 tax years?

## IV. ANALYSIS

A.    *Personal purchase of product points*

"The Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code * * * for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (citation omitted). "As a result, the legislature adopted, by reference, the federal deductions, including those allowed under section 162 of the

DECISION   TC-MD 101369C                                                                5

Internal Revenue Code." *Backen v. Dept. of Rev.*, TC-MD No 101149D WL 2205803 at *2 (June 6, 2011).

"Allowable deductions from taxable income are a 'matter of legislative grace' and the burden of proof (substantiation) is placed on the individual claiming the deduction." *Ellison v. Dept. of Rev.*, TC-MD No 080115C at 4 (Jun 30, 2009) (citations omitted); *see also* ORS 305.427[4] (providing that the burden of proof in the tax court is a preponderance of the evidence and falls upon the party seeking affirmative relief).

Internal Revenue Code section 162(a)[5] allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." However, IRC section 262(a), states that "no deduction shall be allowed for personal, living, or family expenses."

In distinguishing between deductible business expenses and nondeductible personal expenses, the essential inquiry is whether a sufficient nexus exists between the expenses and the carrying on of petitioner's trade or business, or whether the expenses are essentially personal in nature. *Kowalski v. Comm'r*, 65 TC 44, 63 (1975), *rev'd on other grounds*, 544 F2d 686 (3rd Cir 1976), *rev'd*, 434 US 77 (1977); *Henderson v. Comm'r*, TC Memo 1983-372. Where both IRC sections 162(a) and 262 apply to an expense, IRC section 262 takes priority and the expense is not deductible. *Sharon v. Comm'r*, 66 TC 515, 522-523 (1976), *aff'd per curiam*, 591 F2d 1273 (9th Cir 1978), *cert denied*, 442 US 941 (1979).

---

[4] Because there are no material differences between the 2005 and 2007 editions of the Oregon Revised Statutes (ORS), for ease, all references are to the 2005 edition unless otherwise noted.

[5] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code and include updates applicable to 2006, 2007, and 2008. For ease, all references are to the 2006 update because there are no material differences among the 2006, the 2007, and the 2008 updates.

Plaintiffs argue that the requirement to purchase product points is analogous to union dues or a membership fee, and is therefore an allowable deduction under IRC section 162. However, Plaintiffs redeemed these points to buy common household, cosmetic, health, and dietary supplement products for personal use. Had Plaintiffs not bought these products through the business, they would have purchased most of them in local grocery outlets, pharmacies, and other retail establishments. The consumption of these goods—many of which were household products—indicates that they were essentially personal in nature. Thus, Plaintiffs have failed to show a sufficient nexus between the purchase of the product points and the carrying on of their business. Additionally, Plaintiffs' claimed deductions for the purchase of product points average $184.17 per month in 2006, $355.17 per month in 2007, and $226.67 per month in 2008. These amounts exceed the $130 necessary to buy the required minimum of 75 product points, further indicating that Plaintiffs bought the goods for personal rather than strictly business purposes. Such personal expenses are precluded as business expense deduction by IRC section 262(a).

B.      *Motocross sponsorship as advertising expense*

        1.      *Ordinary and necessary*

For a deduction to be allowed as a business expenses, it must be both "ordinary" and "necessary" to a taxpayer's trade or business. IRC § 162(a). "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business; * * * to be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). This court has previously stated that "an ordinary expense is one that is customary or usual. This does not mean customary or usual within the taxpayer's experience

but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev. (Roelli)*, 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)); *Guinn v. Dept. of Rev.*, TC-MD No 040472D, WL 1089727 at*4 (Apr 19, 2005) (citing *Roelli*, 10 OTR at 258). Finally, as stated above, section 262 of the code precludes deductions for personal expenses.

Plaintiffs consider motocross fans as a part of their target market, and they intended to promote the business by placing the decals on the motocross bike, truck, and trailer. Plaintiffs testified credibly that they expected the business to become profitable enough for Hills to quit his job and help Kropf run the business. Plaintiffs testified that advertising at the races is appropriately related to the products they offer because racers need energy and Melaleuca sells energy drinks and vitamins, and racers and their clothes get dirty and Melaleuca sells laundry detergents, soaps, and deodorants.

Defendant disallowed Plaintiffs' claimed advertising deduction because it did not find the expenses to be "ordinary in that there was no reasonably proximate relation to the business of selling household products and motocross racing." (Def's Ex A-3.) Further, Defendant denied the motocross expenses as unnecessary because Plaintiffs had "not proven that the motocross racing deductions were helpful and appropriate in promoting and maintaining the trade or business of selling household products[,]" the expenses unreasonably exceeded the likely benefit derived (increased revenue), and because the motocross expenses were for Plaintiffs' "minor son's personal activity * * *." (*Id.*)

As a general proposition, advertising is a common expense incurred by businesses, particularly in the consumer goods industry. Reaching as many potential customers in a business' target market as possible is crucial to successful advertising. There is a vast array of

DECISION   TC-MD 101369C                                                                                    8

advertising mediums available to businesses, and Plaintiffs are certainly not the first to sponsor a motocross racer—whether he or she be in the professional or amateur category—with the hopes to gain exposure and revenue from the fans in attendance. For this reason, the court finds the disputed advertising "ordinary."

The next question is whether the motocross advertising was "necessary." This is more problematic for Plaintiffs. Plaintiffs testified that their son races two to three times per month throughout the year and that spectator attendance ranges from 100 to 30,000 people. As a primary sponsor, Plaintiffs' business name is mentioned by the announcer. Although Plaintiffs admitted to having no way to determine the amount of revenue they receive as a result of the advertising, they have sold *some* products at the races. However, Plaintiffs cannot show how much revenue the advertising has generated, and they do not even attempt to track the results. After carefully considering the matter, the court concludes the motocross advertising expenses are not "necessary." Even if the advertising were considered "necessary," there is the question of reasonableness in terms of the amount deducted.

### 2. *Reasonable cost*

Business expenses are deductible under IRC section 162 only to the extent they are reasonable in amount. *See U.S. v. Haskel Engineering & Supply Co.*, 380 F2d 786, 788-89 (9th Cir 1967) (stating that if an ordinary and necessary expenditure is unreasonable in amount, "only the portion which [is] reasonable [will] qualify for a deduction under § 162(a).").

The motocross-related deductions plaintiffs claimed on their 2006, 2007 and 2008 federal Schedule C forms equaled 125.2 percent, 75 percent and 154.6 percent of their total income for each respective tax year. (Def's Ex F-1.) During those three years, these expenses amounted to

$44,541, or 117.8 percent of the business' total income of $37,787. (*Id*.) The court finds these amounts unreasonable.

## V. CONCLUSION

After carefully considering the matter, the court concludes that, for tax years 2006, 2007, and 2008, Plaintiffs are not entitled to the deductions taken on their federal Form Schedule C for the purchase of product points which they redeem for household products and consumable items above the amounts allowed by Defendant at the administrative conference level.[6] Further, the court concludes that, for tax years 2006, 2007, and 2008, Plaintiffs are not entitled to the deductions taken on their federal Form Schedule C for the advertising expenses Plaintiffs claimed that relate to their son's motocross racing, above the amounts allowed by Defendant at the administrative conference level.[7] Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of February 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on February 8, 2012. The Court filed and entered this document on February 8, 2012.*

---

[6] Defendant denied the following amounts regarding Plaintiffs' deductions for purchasing product points ("Supplies"): $1,735 of Plaintiffs' claimed amount of $2,210 for 2006, $4,122 of the claimed amount of $4,262 for 2007, and $2,600 of the claimed amount of $2,720 for 2008. (Def's Ex A-1, F-2--F-4.)

[7] Defendant denied the following amounts regarding Plaintiffs' deductions for advertising expenses: $11,939 of Plaintiffs' claimed amount of $18,041 for 2006, $10,441 of the claimed amount of $22,365 for 2007, and $22,161 of the claimed amount of $27,018 for 2008. (*Id*.)